KEYSTONE STEEL & WIRE DIVISION, KEYSTONE CONSOLIDATED INDUSTRIES, Plaintiff-Appellee, *v.* THE DEPARTMENT OF LABOR *et al.*, Defendants-Appellants.

Third District   No. 74-201

Opinion filed April 26, 1976.

John D. Whitenack, Assistant Attorney General, and Donald W. Cohen, both of Chicago, and E. Michael O'Brien, of Peoria, for appellants.

Davis, Morgan & Witherell, of Peoria (Jay D. Swardenski, of counsel), for appellee.

Mr. JUSTICE STENGEL delivered the opinion of the court:

In an administrative review proceeding, the Circuit Court of Peoria County denied unemployment compensation benefits to eight employees of Keystone Steel and Wire, thereby reversing the decision of the Illinois Department of Labor. The employees-claimants and the Department appeal from the circuit court order.

Because of lack of work, Keystone found it necessary to lay off some employees temporarily, and the positions held by claimants were among those for which work was not available. As required by the collective bargaining agreement between Keystone and the employees union, claimants were offered lower paying jobs as laborers because they had sufficient seniority to "bump" employees with lesser seniority. Claimants refused the jobs as laborers and filed claims for unemployment compensation.

A deputy for the Illinois Department of Labor determined that each of the eight employees was eligible for unemployment compensation. Upon appeal, a referee for the Illinois Department of Labor affirmed that all but one of these employees were eligible. Upon a second appeal, to the Board of Review, all eight were held eligible. In a third appeal under the Administrative Review Act, the Circuit Court of Peoria County reversed the Board of Review and this appeal was taken.

According to the evidence introduced at the hearings, before the layoff the claimants had received wages ranging from $175 weekly to $260 weekly, depending on their respective positions. Four men had piece-rate jobs in the shipping department; two were bundlers; one was a Hi-Lift truck operator; and one was a rod hauler. Each man was offered a job as a laborer at $123 weekly and each refused the job because of the difference in the rate of pay. All of these claimants had worked as laborers in the past. Under the provisions of the union contract, when the employer was "unable to offer work to an employee in his normal regular pay bracket," the employee had three alternatives: (1) he could accept the best paying job available; (2) he could take a leave of absence until a job at his regular pay became available; or (3) he could lay off. Because of the seniority system, employees changed jobs "from day to day," and moving up and down or "bumping" was normal practice at Keystone. The eight claimants were all recalled to their regular jobs after a layoff lasting from one to five weeks. Accepting employment as laborers would have reduced their wages by amounts ranging from 30% to 47% of their previous earnings.

The Board of Review, in each case, found that claimants "voluntarily left work because of the difference in the rate of pay" between their previous jobs and that of laborer, and that they "left work voluntarily with good cause." In one case the Board ruled that the claimant Jerry L. Whitworth was eligible for benefits. In the other seven cases, the Board ruled that the claimants were not disqualified from eligibility for leaving work voluntarily without good cause under section 601A of the Unemployment Compensation Act (Ill. Rev. Stat., ch. 48, §431(A)), but directed the deputy to investigate the claimants' availability for work during the period in question.

The circuit court, in an administrative review proceeding, found that there was no dispute as to the facts, and ruled that all the employees were ineligible for benefits because, "As a matter of law, each and every claimant in this cause left work voluntarily without good cause."

Both the Department of Labor and the claimants have joined in this appeal from the circuit court ruling, and, in addition, we have allowed an *amicus curiae* brief to be filed on behalf of the Illinois State Federation of Labor and Congress of Industrial Organizations and its officers.

Keystone contends that these claimants were ineligible for unemployment compensation benefits because they voluntarily left work without good cause contrary to section 601 of the Unemployment Compensation Act (Ill. Rev. Stat., ch. 48, §431), and because they failed, without good cause, to accept suitable work offered by Keystone as proscribed by section 603 of the Act (Ill. Rev. Stat., ch. 48, §433). Section 603 of the Unemployment Compensation Act also provides:

> "In determining whether or not any work is suitable for an individual, consideration shall be given to the degree of risk involved to his health, safety, and morals, his physical fitness and prior training, his experience and prior earnings, his length of unemployment and prospects for securing local work in his customary occupation, and the distance of the available work from his residence."

On behalf of the claimants, it is argued that they left work involuntarily when they were laid off their normal jobs, and that they had good cause for refusing the offered employment as laborers because of the substantial reduction in pay. Keystone insists that the claimants were not laid off but, under the terms of the seniority plan, were offered alternative work which they refused without good cause. This semantic disagreement was resolved when the Board of Review expressly found that each claimant voluntarily left work with good cause. Clearly the record supports a finding that the claimants left work voluntarily. The determinative issue then is whether a substantial reduction in pay amounted to "good cause" for leaving when offered jobs as laborers.

First, we reject Keystone's contention that the seniority system incorporated in the union contract places these claimants in a different position than employees who do not have seniority rights to lower paying jobs. The contract requires the employer to offer alternative work to employees who are not needed in their regular jobs, but it does not require the employee to accept the offered work. The Unemployment Compensation Act specifically provides that any agreement to waive, release or commute rights under the Act is void. It is the statute which controls eligibility for benefits, not the contract. (*Johns-Manville Products Corp. v. Board of Review* (1973), 122 N.J. Super. 366, 300 A.2d 572; *Green v. Republic Steel Corp.* (1975), 37 N.Y.2d 554, 338 N.E.2d 594, 376 N.Y.S.2d 75.) Consequently the claimants' right to unemployment compensation should be viewed as though Keystone had voluntarily offered them jobs as laborers.

No Illinois case has previously considered whether a reduction in pay constitutes "good cause" for leaving work. After reviewing the decisions of other jurisdictions, we believe that, according to the weight of authority, a substantial reduction in wages can be "good cause" for

leaving employment, depending upon the attendant circumstances. *Johns-Manville Products Corp. v. Board of Review; Shay v. Unemployment Compensation Board of Review* (1967), 424 Pa. 287, 227 A.2d 174; *Bunny's Waffle Shop, Inc. v. California Employment Com.* (1944), 24 Cal. 2d 735, 151 P.2d 224; *Pacific Mills v. Director of Division of Employment Security* (1948), 322 Mass. 345, 77 N.E.2d 413; *Dubkowski v. Administrator, Unemployment Compensation Act* (1963), 150 Conn. 278, 188 A.2d 658; 76 Em. Jur. 2d *Unemployment Compensation* §62 (1975); 81 C.J.S. *Social Security & Public Welfare* §170 (1953).

In a substantially similar New Jersey case, where an employee with seniority refused to accept a low-skilled job which paid 25% less than his previous job as a machinist, the court upheld an administrative finding that he left work voluntarily with good cause. The court distinguished those cases where the downgrading was not severe and the loss of pay not large, and held that the 25% reduction in pay was substantial, and constituted good cause for leaving work under the New Jersey unemployment compensation statute. *Johns-Manville Products Corp. v. Board of Review.*

*Shay v. Unemployment Compensation Board of Review,* a Pennsylvania case, involved two employees who refused to work as laborers at a 30% reduction in pay after having worked as a carpenter and bricklayer, respectively. The Board of Review and the trial court denied unemployment compensation, ruling that they had left work "without cause of a necessitous and compelling nature"[1] because the reduced pay was still a substantial wage and the transfer was only temporary. Reversing the trial court, the supreme court stated:

> "To compel them to work as laborers at a considerable reduction in pay would, under the circumstances of this case, violate the express provisions of the Act which declares that a claimant is barred from unemployment compensation only if he refuses 'suitable' work * * *." (424 Pa. 287, 290, 227 A.2d 174, 176.)

The court held that the Pennsylvania statute, one similar to the Illinois law, requires consideration of numerous criteria in determining suitability of offered work, including previous earnings, prior training, and experience. Accord, *United States Steel Corp. v. Board of Review* (1975), 18 Pa. Cmwlth. 71, 333 A.2d 807.

The opposite result was reached in *Bus v. Bethlehem Steel Corp.* (1971), 37 App. Div. 2d 98, 322 N.Y.S.2d 310, *aff'd,* 32 N.Y.S.2d 955, 300 N.E.2d 736, 347 N.Y.S.2d 206, where employees under a "bumping" contract refused work as laborers at a 15% reduction in pay. The lower court ruled that the Board of Review erred as a matter of law in granting

[1] This standard imposed under the Pennsylvania statute is more stringent than the "good cause" requirement under the Illinois Act.

compensation because the New York statute does not mention previous earnings as good cause for refusing work, and held that employees must accept suitable employment or be disqualified from benefits. On appeal, the lower court was affirmed without an opinion. Unlike the New York statute, the Illinois Unemployment Compensation Act (Ill. Rev. Stat., ch. 48, §433) does include "previous earnings" as one criteria for determining whether offered work was "suitable."

Keystone also relies on an Ohio case, which affirmed a Board of Review decision denying unemployment benefits to a claimant who refused substitute work at a 15% reduction in pay. In *Pennington v. Dudley* (1967), 10 Ohio St. 2d 90, 226 N.E.2d 738, the court stated that a 15% reduction in pay did not require the conclusion as a matter of law that the job offered was not suitable, but the court recognized that there may be instances where a lower-paying job would not be suitable work within the meaning of the statute. We believe reliance on *Pennington* would not compel us to affirm the trial court. Here the reduction in pay is two to three times that in *Pennington,* and we are reviewing an administrative finding that the claimants did have good cause for refusing substitute work, and not, as in *Pennington,* a ruling that good cause was not present.

Other factors to be taken into account under section 603 are the claimant's "length of unemployment and prospects of securing local work at his customary occupation." According to the evidence in the record, all of these claimants expected to be recalled to their previous jobs at Keystone within a fairly short time, and in fact, were recalled after periods of unemployment varying from one to five weeks. In a Minnesota case where a boilermaker had refused to work as a truck driver at a 50% reduction in pay while waiting recall to his regular job, the court held that the substitute work was not "suitable" since the claimant expected to be recalled within a reasonable time and in fact was recalled two weeks after he was laid off. *(Berthiaume v. Christgau* (1944), 218 Minn. 65, 15 N.W.2d 115.) The court noted that alternative work would become "suitable" if prospects of re-employment did not materialize within a reasonable time. Accord, *Bayly Manufacturing Co. v. Department of Employment* (1964), 155 Colo. 433, 395 P.2d 216; *Hallahan v. Riley* (1946), 94 N.H. 48, 45 A.2d 886.

Another consideration is the training and experience of the claimants. It is obvious from the evidence that work as a laborer requires less training and experience than the higher-paying jobs previously held by the claimants. As a general rule, courts have held that a claimant may refuse work for which the claimant is not fitted by previous training, experience or skill. (See Annot., 97 A.L.R.2d 1125, §3 (1964).) As Keystone correctly notes, the claimants here have all worked as laborers during previous periods of layoffs, and therefore they were fitted for the offered work.

While acknowledging that full utilization of skills is desirable, some courts have said that unemployment compensation was not intended as a guaranty that a claimant will be entitled to benefits unless he is offered a job at precisely the same level of skill as his last employment. (See, *e.g.,* *Heater v. Corsi* (1946), 270 App. Div. 311, 59 N.Y.S.2d 793.) However, the more prevalent view is that a claimant is entitled to benefits for a reasonable period to enable him to seek work at a level of skill and rate of pay commensurate with his previous employment. *In re Potvin* (1973), 132 Vt. 14, 313 A.2d 25; *Boeing Co. v. State Employment Security Board of Review* (1972), 209 Kan. 430, 496 P.2d 1376; *Dubkowski v. Administrator, Unemployment Compensation Act*; *United States Steel Corp. v. Board of Review* (1973), 10 Pa. Cmwlth. 295, 310 A.2d 94.

In summary, after considering all of the factors present here, including the prospects for recall within a short time and the unskilled nature of a laborer's job, as well as the substantial reduction in pay, we believe the Board of Review correctly determined that claimants had good cause for refusing to work as laborers. Accordingly, we must reverse the judgment of the circuit court.

Keystone also contends that the claimants failed to establish either that they were available for work or that they made bona fide efforts to find other jobs that paid as well as their previous employment. Under section 500 of the Unemployment Compensation Act (Ill. Rev. Stat., ch. 48, §420), as a condition of eligibility, a claimant must register for work and report at an employment office, must be available for work, and must actively seek work. The Board of Review found the evidence insufficient to establish whether seven of the claimants were available for work as required by the statute, and directed the deputy to investigate their availability before benefits would be payable. In the case of the eighth claimant, Whitworth, the question of availability was neither raised nor considered by the Board.

As to Whitworth, the issue of availability was waived, and his eligibility for benefits has been finally decided. However, the eligibility of the remaining seven claimants is still dependent upon a determination of their availability for work during the periods in question. We believe this determination should be made by the administrative agency since the trier of fact is in a better position to weigh the evidence than is a court of review.

We reverse the order of the circuit court, and affirm the decision of the Board of Review, and remand this cause for further proceedings consistent with the views expressed herein.

Reversed and remanded.

STOUDER, P. J., and BARRY, J., concur.