LOWELL CROCKER, Plaintiff-Appellant, *v.* THE DEPARTMENT OF LABOR *et al.*, Defendants-Appellees—(Leonard Weiss, Manager, Winnebago County Bureau of Employment Security Division of Unemployment Insurance, The Department of Labor, *et al.*, Defendants).

Second District   No. 83—169

Opinion filed January 19, 1984.

LINDBERG, J., dissenting.

Mary Therese Wolf, of Prairie State Legal Services, of Rockford, for appellant.

Neil F. Hartigan, Attorney General, of Springfield (Patricia Rosen, Assistant Attorney General, of counsel), for appellees.

PRESIDING JUSTICE SEIDENFELD delivered the opinion of the court:

Lowell Crocker appeals from a judgment affirming the decision of the Illinois Department of Labor Board of Review (the Board), which affirmed the denial of compensation benefits to him.

The Board decided Crocker was ineligible for benefits under section 500(C) of the Unemployment Insurance Act (Ill. Rev. Stat. 1981, ch. 48, par. 420) because he voluntarily left his job without good cause attributable to the employer. (Ill. Rev Stat. 1981, ch. 48, par. 431.) The circuit court affirmed the Board's decision on the basis that the employee had voluntarily left his job without good cause attributable to the employer under section 601(A) (Ill. Rev. Stat. 1981, ch. 48, par. 431(A)), and the exceptions set forth in section 601(B)(5) (Ill. Rev. Stat. 1981, ch. 48, par. 431(B)(5)) did not apply.

Crocker had been employed full time as a manager of a tire store until April 1981, when the store closed. He filed a claim for unemployment insurance benefits with the division of unemployment insurance.

While collecting benefits, Crocker took a part-time job as a construction worker and later as a part-time employee with K-Mart, began working for K-Mart as a mechanic/janitor sometime around July 4, 1981, and voluntarily quit on July 18, 1981. He continued to report to the unemployment office and collected benefits from July 26, 1981, through August 29, 1981. A claims adjudicator declared that Crocker was ineligible for benefits from July 26 through October 17, 1981, or

until he found work equal to at least six times the weekly benefit amount, whichever occurred earlier, and that he had been overpaid from July 26 through August 29, 1981. Upon redetermination, a claims adjudicator found that, under section 900 of the Act (Ill. Rev. Stat. 1981, ch. 48, par. 490), Crocker left his job without cause attributable to the employer and did not report that to the Unemployment Insurance Office. The claims adjudicator found, therefore, that Crocker must repay the benefits paid to him from July 26 through August 29, 1981. Crocker filed an application for reconsideration with the Department of Labor, maintaining that he was eligible for unemployment benefits because he left unsuitable work voluntarily with good cause under section 601(B)(5).

Crocker testified that from March 1980 until he lost his job in April 1981, as the manager of the tire store, his earnings from this job were approximately $1,200 per month. At K-Mart, plaintiff worked approximately 20 hours per week at an hourly rate of $3.50 per hour. While he thought he would receive training as a mechanic, most of his duties consisted of mopping floors and cleaning the bathroom. He also stated he was dissatisfied with being scheduled to work on Sundays, which interfered with his teaching Sunday school and attending church, with the lack of opportunity for advancement, and with the unpleasant and unprofessional atmosphere. He reported the earnings from this job to the Department of Labor. He stated there was no reduction in his weekly benefit amount for two of the three weeks he worked at the K-Mart position and a reduction in the third week was inconsequential.

The referee affirmed the claims adjudicator's determination and denied the claim for benefits. He held that the employee voluntarily left employment without good cause attributable to the employer under section 601(A) or within the limited exceptions specified in section 601(B)(5).

The Board of Review and the circuit court affirmed.

On appeal, Crocker contends that the decision of the Board is against the manifest weight of the evidence. At issue is the validity of the agency's finding that the employee was ineligible for unemployment compensation benefits because he voluntarily left his work without good cause contrary to section 601(A) of the Act which provides, as material:

> "An individual shall be ineligible for benefits for the week in which he has left work voluntarily without good cause attributable to the employing unit and, thereafter, until he has become reemployed * * *" (Ill. Rev. Stat. 1981, ch. 48, par. 431(A))

and contrary to the exceptions in section 601(B)(5) of the Act to work "[w]hich he had accepted after separation from other work, and the work which he left voluntarily would be deemed unsuitable under the provisions of section 603." Ill. Rev. Stat. 1981, ch. 48, par. 431(B)(5).

The Act is designed to provide unemployment insurance benefits for the unemployed person who is willing, anxious, and ready to accept suitable employment and who meets certain statutory conditions prescribed. The Act permits claimants to supplement their benefits with earnings from part-time employment. (Ill. Rev. Stat. 1981, ch. 48, par. 402.) As the receipt of unemployment insurance benefits is a conditional right, the burden of proving eligibility before the Board rests with the claimant. *Yadro v. Bowling* (1980), 91 Ill. App. 3d 889, 893; *Rosenbaum v. Johnson* (1978), 60 Ill. App. 3d 657, 662.

Under section 603, a claimant may reject work or referral to employment if the job in question is not "suitable." (Ill. Rev. Stat. 1981, ch. 48, par. 433.) In determining whether certain work is suitable, consideration must be given to various factors, including any risk to the claimant's health or safety, the claimant's physical fitness, his or her prior training and experience, the claimant's prior earnings, the length of time for which the claimant has been employed, the prospects for securing local work in the claimant's customary occupation, and the distance of the available work from claimant's residence. Ill. Rev. Stat. 1981, ch. 48, par. 433; *Keystone Steel & Wire Division, Keystone Consolidated Industries v. Department of Labor* (1976), 37 Ill. App. 3d 704, 708.

It has been held that a claimant is justified in refusing employment where the job offers a level of skill and rate of pay not commensurate with his previous employment, depending on the circumstances in each case. Thus, a skilled worker who has been unemployed for only a short time may refuse to accept unskilled work with a substantial pay reduction. (*Keystone Steel & Wire Division, Keystone Consolidated Industries v. Department of Labor* (1976), 37 Ill. App. 3d 704, 709.) A claimant, thus, is entitled to benefits for a reasonable period to enable him or her to seek work under conditions comparable to those of his or her former employment. (37 Ill. App. 3d 704, 708.) However, the longer the claimant has been out of work, the more willing he or she must be to perform different tasks, travel farther, and accept lower pay. *Doyle v. Board of Review* (1975), 31 Ill. App. 3d 968, 970.

The Department, in its Manual of Benefit Precedent Decisions, has provided some guidance in evaluating a claimant's eligibility after

voluntarily leaving employment. The manual provides that work may be unsuitable for any worker under section 603 due to wages or working conditions. (M.B.P.D.T. No. 285, VL425.05 (November 15, 1982).) In particular, the manual states that a reduction of 10 to 15% in wages may be sufficient to render work unsuitable. (R.W. 500.35.) The manual recognizes that a claimant's prior work experience and earnings may render a job unsuitable. (M.B.P.D.T. No. 285, VL425.05 (November 15, 1982).) The manual provides sample cases to illustrate this interpretation. In example "2," a claimant, who earns $300 a week, on March 8 accepts a temporary job at $3.35 per hour, after searching two months without finding suitable employment, and on March 22 leaves, is still eligible for unemployment benefits because the temporary job is unsuitable in consideration of his previous wages. Other factors to be taken into account under section 603 are the claimant's length of unemployment and prospects of securing local work at his customary occupation. The manual provides that the minimum number of weeks which can be considered a reasonable length of time to seek skilled work is 10 weeks. "A very menial job is never suitable for a skilled worker." R.W. 295.05.

■ To the extent that good cause and suitability are factual issues, the agency's determination is *prima facie* true and correct and should be not disturbed on review unless the findings are against the manifest weight of the evidence. (Ill. Rev. Stat. 1981, ch. 110, par. 3—110; *Peterson v. Board of Trustees* (1973), 54 Ill. 2d 260, 262-63.) Further, agency guidelines, such as the Department's Manual, are presumed to be valid, and a court should not disregard them unless they are unreasonable. *Brown v. Sexner* (1980), 85 Ill. App. 3d 139, 152.

Based on Crocker's prior employment, training, experience, wages and the length of time he has been unemployed, the K-Mart job was unsuitable under section 603 and therefore pursuant to section 601(B)(5), he is not disqualified from benefits for voluntarily leaving this job. Crocker was a skilled worker. He held a B.S. degree and had worked since 1979 as a manager. His earnings from his last job were approximately $1,200 per month. He was unemployed approximately 12 weeks before he accepted the K-Mart position at a pay rate of $3.50 per hour at 20 hours per week. Assuming he worked 45 hours per week, he maintains, his pay would be over $5 per hour from his prior job, while the K-Mart job paid $3.50 per hour, a reduction of over 30% per hour. Where the job offered is unskilled with a substantial reduction in pay, and the claimant has not been unemployed for an unreasonable length of time, refusal of work is justified under section 603. (*Keystone Steel & Wire Division, Keystone Consolidated In-*

*dustries v. Department of Labor* (1976), 37 Ill. App. 3d 704, 708.) Further, as Crocker was unemployed only 12 weeks at the time he took the K-Mart job, he falls within the length of time considered to be reasonable for a skilled worker to seek skilled employment as prescribed by the manual.

Since Crocker would not have been disqualified for refusing an unsuitable job, it follows that he should not be penalized for leaving a part-time job that is not commensurate with the level of skill and pay he previously enjoyed.

We agree with the Department's argument that part-time work is not *per se* unsuitable. However, in the examples of leaving without good cause attributable to the employer to which the Department points, the worker left otherwise suitable work solely because his hours were reduced. These examples are inapposite, because we find that Crocker accepted unsuitable work. Section 601(B)(5) allows a worker voluntarily and without penalty to leave unsuitable work which he accepted after separation from other employment. (Ill. Rev. Stat. 1981, ch. 48, par. 431(B)(5).) We conclude that Crocker's part-time employment at K-Mart was established to be unsuitable under section 603 (Ill. Rev. Stat. 1981, ch. 48, par. 433) not because it was part-time but because it was not commensurate with Crocker's experience and because it did not provide the promised training.

■ After considering the circumstances presented, we conclude that the Board erred in requiring Crocker to show that he had good cause for leaving his part-time position as a janitor at K-Mart. The Board applied an improper legal standard in determining that because he voluntarily made himself unavailable to work for K-Mart he therefore was not eligible for benefits under section 500(C) of the Act (Ill. Rev. Stat. 1981, ch. 48, par. 420(C)). The findings of the claims adjudicator and of the circuit court were based on section 601 of the Act, but we conclude that the findings and decision of the Board and of the circuit court are against the manifest weight of the evidence.

The judgment of the circuit court of Winnebago County is reversed and the cause is remanded to the Board of Review of the Illinois Department of Labor for a determination of benefits due to Lowell Crocker under section 601(B)(5) of the Illinois Unemployment Compensation Act. Ill. Rev. Stat. 1981, ch. 48, par. 431(B)(5).

Reversed and remanded.

UNVERZAGT, J., concurs.

JUSTICE LINDBERG, dissenting:

I dissent. The majority concludes that employment at K-Mart was unsuitable for this claimant on two grounds: (1) based upon his prior experience and training he was a skilled employee required to perform unskilled tasks at K-Mart, and (2) he was subjected to a substantial reduction in pay as defined by the Department's guidelines.

I conclude that the finding of the adjudicator, the Board of Review and the circuit court that the K-Mart job was suitable employment under the statute was not against the manifest weight of the evidence. First, the claimant failed to establish he was a skilled employee. In fact, the K-Mart work was the same as he had been doing for the past three years. Second, the claimant waived any issue of the disparity in hourly wage rates when he failed to initially raise the issue with the adjudicator. While he complained of low pay in his motion for reconsideration, he failed to pursue the issue in his appeal to the Board of Review. The issue of rate of pay upon which the majority relies was never before the hearing officer and, so far as the record discloses, was raised for the first time on appeal to this court.

The record demonstrates that the claimant was not a skilled employee. He testified that he held a bachelor's degree in physical education and held a teaching certificate while in college in 1975. No further evidence was presented by the claimant that related to his educational qualifications or their relationship to his employment.

Further, the claimant presented no evidence of his work history before August 1978. At that time he:

> "just started working a regular service station type job pumping gas and fixing tires and that kind of work and within five months in January [1979], I was asked to take the responsibility of the manager's job of the station which I did. My work week consisted of about 55-60 hours every week—six days a week and I did this for about a year and a half [until March 1980]."

The claimant presented no evidence to establish the nature of this new responsibility from which it could be concluded that he did anything other than continue to pump gas and fix flats.

In April 1980 he took a job in Roscoe, Illinois, which was also six days per week. He testified that:

> "I took that responsibility and tried to start a tire store, but the tire store fizzled out. It didn't get off the ground and the tire store closed."

Contrary to his assertion on appeal, there was no evidence that he was the manager of the store. Further, the claimant presented no evi-

dence that he performed the work of a skilled employee in that job.

In April 1981 he lost the job at the tire store. Thereafter, he filed this claim for unemployment compensation, performed undescribed tasks in the remodeling of an apartment building on a part-time basis and accepted the part-time employment with K-Mart at issue in this case. His testimony discloses that one of his disappointments with the part-time employment at K-Mart was that he performed oil changes and fixed flat tires "which I had been doing for the past three years." The record fully supports the conclusion of the Board of Review that the K-Mart job was suitable employment based upon the claimant's prior training and experience. I would not conclude that the additional work of mopping floors and cleaning bathrooms requires a conclusion contrary to that of the fact finders below.

The majority also heavily relies upon the disparity between the claimant's prior rate of pay and his K-Mart rate of pay. It is noteworthy that among the numerous allegations originally made by the claimant to the adjudicator, none addressed his rate of pay. He first claimed his pay was too low in his application for reconsideration of the adjudicator's decision. A very careful reading of the record before the Board of Review fails to disclose that he pursued the issue that his pay was too low vis-a-vis his rate of pay. The testimony instead relates to the inadequacy of the hours he worked in his third and last week which was 17½ hours instead of the 20 to 24 he allegedly was promised. However, even in this regard it was claimant who insisted on not working Sunday mornings because it conflicted with his Sunday-school teaching. Those lost hours may have increased his weekly hours to the 20-24 hours promised him.

In sum, there is virtually no evidence to support a reversal of the findings by the adjudicator upon reconsideration, the Board of Review or the circuit court that the K-Mart position was suitable employment for this claimant. On the other hand, the record is replete with evidence that the claimant did not want to work with mechanics who drank liquor at lunch, were unprofessional and lacking in customer loyalty and created an adverse environment for his Christian development. The record discloses that his only complaint to a representative of the employer was having to work on a Sunday morning, and he was granted the relief he sought. Otherwise he made no effort to have the employer adjust his employment grievances which dealt with his perception of the unsuitability of his co-employees, the evening and Sunday work schedule and unlikelihood that he would advance. The decision below should be affirmed.