CHERYL L. MANGAN, Plaintiff-Appellant, v. E. ALLEN BERNARDI, Director of Labor, *et al.*, Defendants-Appellees (Olympia Fields Osteopathic Medical Center, Defendant).

First District (3rd Division)   No. 84—770

Opinion filed March 13, 1985.

Susan Burzawa, of Loyola University Community Law Center, of Chicago, and Ray Minrod, law student, for appellant.

Neil F. Hartigan, Attorney General, of Springfield (Kathryn A. Spalding, Assistant Attorney General, of Chicago, of counsel), for appellees.

JUSTICE McGILLICUDDY delivered the opinion of the court:

Plaintiff, Cheryl L. Mangan, appeals from a judgment entered by the circuit court of Cook County pursuant to the Administrative Review Law (Ill. Rev. Stat. 1983, ch. 110, par. 3—101 *et seq.*) confirming a decision of the Board of Review of the Illinois Department of Labor (hereafter Board) denying her unemployment insurance benefits. On appeal, plaintiff contends that the circuit court erred when it determined that, as a matter of law, she refused an offer of work without good cause and when it failed to rule that the referee and Board neglected their statutory and constitutional duties to develop all relevant facts and make specific findings of facts on the issues.

During the evidentiary hearing before the adjudicator, Thomas

Cavanaugh, a representative of Olympia Fields Osteopathic Medical Center (hereafter Osteopathic), testified that from September 14, 1981, until July 10, 1982, plaintiff was employed at Osteopathic as a radiology technician. When plaintiff went on maternity leave July 10, 1982, she was earning $8.05 per hour and worked 20 hours per week.

After plaintiff's leave expired, Sue Bolden, who apparently was the manager of the radiology unit at Osteopathic, telephoned plaintiff and asked if she would accept another part-time position at $8.29 per hour. The proposed work schedule would require plaintiff to work an eight-hour shift every other Saturday and during alternate weeks, from 3 p.m. to 7 p.m. on weekdays.

According to Cavanaugh, plaintiff refused to accept the position because there were not enough hours and she could receive more money through unemployment compensation benefits. Cavanaugh added that while plaintiff was on lay-off status, she could receive health insurance from Osteopathic, but if she accepted the part-time position she would not be eligible for such benefits. Cavanaugh also claimed that plaintiff's acceptance of the part-time position would not preclude her from obtaining other employment or using her husband's medical insurance.

Plaintiff testified that during a telephone conversation March 21, 1983, Sue Bolden told her that a part-time position of eight hours a week for a radiology technician at $8.29 an hour was available. The following day, plaintiff telephoned Bolden and told her she would not accept the position because there were not enough hours being offered. Plaintiff stated that she thought Bolden understood that she had rejected the position because insurance, holiday and sick pay were not included. Plaintiff indicated that while Bolden advised her that she would be working more hours, she thought they would be unscheduled. According to plaintiff, when Bolden stated that she did not know if plaintiff could concomitantly claim unemployment insurance and work, plaintiff concluded that she would not be permitted to do so.

Additionally, plaintiff stated that if she knew that she could collect partial unemployment insurance benefits she would have accepted the part-time position. Plaintiff also indicated that while she preferred part-time employment, she would accept a full-time position.

The record also established that plaintiff was married and had a three-year-old child and a six-month-old infant. Her husband's employer provides some insurance benefits for the family, and plaintiff's mother and a neighbor are able to care for the children in her absence.

When the adjudicator informed plaintiff that she could receive partial unemployment insurance while working part-time, she contacted Osteopathic, but was told that the position was filled. According to plaintiff, she continued to apply for a position at other hospitals.

Plaintiff first asserts that the circuit court erred when it determined as a matter of law that she refused an offer of work without good cause. Because the Unemployment Compensation Act was passed with the public welfare in mind, construction of its provisions should favor inclusion of employees in determining their employer's liability, and there is a strict burden of proof placed upon an employee claiming an exemption. (*Hart v. Johnson* (1979), 68 Ill. App. 3d 968, 386 N.E.2d 623.) Nevertheless, the burden of proving eligibility for unemployment compensation benefits rests upon the claimant. (*Kocourek v. Bowling* (1981), 96 Ill. App. 3d 310, 421 N.E.2d 397.) Our function on review of the Board's determination is limited to ascertaining whether its findings of fact are sustained by the evidence. (*Yadro v. Bowling* (1980), 91 Ill. App. 3d 889, 414 N.E.2d 1244.) The standard for review of the Board's determination that an employer is not liable for unemployment compensation concerning an employee is whether that decision is against the manifest weight of the evidence. *Griffitts Construction Co. v. Department of Labor* (1979), 76 Ill. 2d 99, 390 N.E.2d 333.

It is well settled that a claimant is justified in refusing employment where the job offers a level of skill and rate of pay not commensurate with her previous employment, depending on the circumstances in each case. (*Crocker v. Department of Labor* (1984), 121 Ill. App. 3d 185, 459 N.E.2d 332.) Good cause for refusing work must involve circumstances which are real, substantial and reasonable, not arbitrary, immaterial or capricious. (*Thompson v. Board of Review* (1983), 120 Ill. App. 3d 1, 457 N.E.2d 512.) An important consideration is whether the claimant's behavior manifests good faith consistent with a general desire to be employed. (*Thompson v. Board of Review* (1983), 120 Ill. App. 3d 1, 457 N.E.2d 512.) Additionally, a claimant is entitled to benefits for a reasonable period to enable her to seek work at a level of skill and rate of pay commensurate with her previous employment. *Keystone Steel & Wire Division, Keystone Consolidated Industries v. Department of Labor* (1976), 37 Ill. App. 3d 704, 346 N.E.2d 399.

In the instant matter, the claims adjudicator determined that plaintiff refused the part-time position offered by her former employer with good cause, *i.e.*, her income would be substantially re-

duced and she would be unable to receive fringe benefits, including medical insurance, that were available to her as a laid-off worker. We cannot conclude that the claims adjudicator's decision was improper. It is undisputed that if the plaintiff accepted the position she would work fewer hours and no longer qualify for medical insurance or holiday or sick pay. And although the hourly wage in the new position, $8.29, was somewhat higher than the $8.05 plaintiff received before taking maternity leave, the net result would be less because of the loss of fringe benefits. Further, plaintiff's attempts to secure other employment manifested good faith consistent with a desire to be employed. We believe that plaintiff's rejection of the position was based on good cause involving circumstances that were substantial and reasonable. We believe that the final administrative decision was therefore against the manifest weight of the evidence and that the circuit court erred in confirming that decision.

As a result of our determination that plaintiff's claim for unemployment compensation benefits should be granted, it is unnecessary to address the remaining issue presented.

For the reasons stated, the judgment of the circuit court of Cook County is reversed.

Reversed.

WHITE, P.J., and McNAMARA, J., concur.