DORIS JONES, Plaintiff-Appellant, v. THE DEPARTMENT OF LABOR, Bureau of Employment Security, Division of Unemployment Insurance, Director E. Allen Bernardi; Board of Review, Chairman, Bruce W. Barnes, Defendant-Appellee (K mart Corporation, Defendant).

Third District No. 3—85—0183

Opinion filed January 9, 1986.

Gregory J. McHugh and Thomas L. Kilbride, both of Prairie State Legal Services, Inc., of Rock Island, for appellant.

Neil F. Hartigan, Attorney General, of Springfield (Roma Jones Stewart, Solicitor General, and Karin Kepler, Assistant Attorney General, of Chicago, of counsel), for appellee.

PRESIDING JUSTICE HEIPLE delivered the opinion of the court:

This is an appeal from an order of the Board of Review of the Illinois Department of Labor. The Board affirmed a referee's decision that plaintiff, Doris Jones, was ineligible for benefits in 1983

and had been ineligible for benefits received in 1982. Upon administrative review, the circuit court affirmed the decision of the Board.

Until October 16, 1981, plaintiff was employed at International Harvester (IH). She earned $320/week, or $8/hour as an expeditor. The record does not reveal what tasks or skill levels this position entailed. She began receiving $198/week in unemployment benefits.

On March 9, 1982, plaintiff took a part-time cashier's job at K mart. The job paid $3.40/hour for approximately 18 hours of work per week.

At her hearing, plaintiff testified that she lost her regular, inexpensive babysitter in April. She also testified to expending $20/week in transportation from Rock Island to Moline. Plaintiff began experiencing scheduling difficulties due to her inability to secure affordable child care. Her last shift was in late April. Her stated reason for leaving was low pay.

Section 601A of the Unemployment Insurance Act provides:

"An individual shall be ineligible for benefits for the week in which he has left work voluntarily without good cause attributable to the employing unit ***." (Ill. Rev. Stat. 1981, ch. 48, par. 431(A).)

The Board of Review found that plaintiff left her job due to domestic and transportation concerns. Thus, her leaving was not for any cause attributable to K mart. This finding is certainly supported by the manifest weight of the evidence.

Plaintiff does not seriously dispute this finding. She argues, however, that the Board erred in not applying the exception to ineligibility found in section 601(B)(5). That provision reads as follows:

"(B) The provisions of this Section shall not apply to an individual who has left work voluntarily: ***

(5) Which he had accepted after separation from other work, and the work which he left voluntarily would be deemed unsuitable under the provisions of Section 603." (Ill. Rev. Stat. 1983, ch. 48, par. 431(B)(5).)

Plaintiff contends that the extreme disparity between her wages at IH and K mart rendered the latter unsuitable within the meaning of section 603.

Section 603 provides:

"In determining whether or not any work is suitable for an individual, consideration shall be given to the degree of risk involved to his health, safety, and morals, his physical fitness and prior training, his experience and prior earnings, his length of employment and prospects for securing local work in

his customary occupation, and the distance of the available work from his residence." Ill. Rev. Stat. 1983, ch. 48, par. 433.

We first considered this exception to disqualification in *Keystone Steel & Wire Division, Keystone Consolidated Industries v. Department of Labor* (1976), 37 Ill. App. 3d 704, 346 N.E.2d 399. The employees in question were senior union employees who went on temporary layoff. Under their collective bargaining agreement, they were allowed to bump less senior employees in lower paying laborers jobs pending recall. Plaintiffs did not exercise this option and sought unemployment benefits instead. The issue before the court was whether the employees left Keystone for good cause when they refused to bump the less senior laborers. While this case is not directly on point, it contains an excellent discussion of the suitability of available, less rewarding work. The court focused on the substantial reduction in pay and the lower skill levels required in the available jobs. More significantly, it took into account the fact that the loss of the previous employment was for a temporary, finite period. Hence, under those circumstances, a lower-paying laborer's job would be unsuitable when the employees' established jobs were going to come back soon anyway.

Another available precedent is *Crocker v. Department of Labor* (1984), 121 Ill. App. 3d 185, 459 N.E.2d 332. Plaintiff had a B.S. degree and was employed for a year as a tire store manager at approximately $1,200/month. Twelve weeks after he lost his job, he became employed as a part-time mechanic at K mart, earning $70/week. While he expected to receive training as a mechanic, most of his duties were janitorial. He also testified to an unpleasant and unprofessional atmosphere. The court found that this new position was unsuitable under section 603. The court considered the skill level of his prior employment, the substantial reduction in wages and the relatively brief period of unemployment between jobs.

■ We find the situation of plaintiff to be distinguishable from that of the Keystone employees and Crocker. It is indisputable that plaintiff suffered a severe wage reduction in accepting the position. Plaintiff pursued this point by introducing into evidence a copy of the Department's Policy Manual. The manual cites examples of unsuitability stemming from pay disparity. While these manuals are certainly relevant, they are not dispositive. The question of suitability can only be resolved based on the individual circumstances of each case. Also, all the factors listed in section 603 must be taken into consideration.

It is those factors unrelated to wages which defeat plaintiff's claim that her job at K mart was unsuitable. There was no evidence of any possible health or safety risks. Plaintiff is relatively young, and there is nothing to suggest that her physical fitness is at issue. While her job at IH paid fairly well, the record is devoid of evidence of any training or skill required to perform her duties there. The distance of the K mart job from plaintiff's home is not an issue. Although plaintiff testified to her high transportation costs, the job was in Moline and she lived in nearby Rock Island. The truly determinative factors are length of unemployment and prospects for securing local work in her customary occupation. Plaintiff had been out of work for five months. There is no evidence of any prospects of a job at anything near her previous wage rate. In addition, we take judicial notice of both the soft job market in the Quad Cities area generally during this time and the particular plight of large industrial employers such as IH.

■■ The true purpose of section 601(B)(5) is to exempt from disqualification those individuals who, in times of need, take jobs which clearly are beneath their established skill levels and wage-earning capabilities, although other factors listed in section 603 are relevant. Were we to adopt plaintiff's arguments, we would be effectively locking individuals into the unemployment system who should be out readjusting and reassessing their place in the job market due to declining economic conditions. In light of the continuing troubles of the higher-paying manufacturing industries of this State, we believe that such a result would be highly counterproductive.

Accordingly, the judgment of the circuit court of Rock Island County is affirmed.

Affirmed.

SCOTT and WOMBACHER, JJ., concur.