THEO KOMAREC, Plaintiff-Appellee, v. THE ILLINOIS DEPARTMENT OF LABOR *et al.*, Defendants-Appellants.

Second District   No. 2—85—0253

Opinion filed June 26, 1986.

Neil F. Hartigan, Attorney General, of Springfield (Candida Miranda and Jill Wine-Banks, Assistant Attorneys General, of Chicago, of counsel), for appellants.

David Taylor, of Prairie State Legal Services, of Rockford, for appellee.

JUSTICE LINDBERG delivered the opinion of the court:

Defendants, Board of Review (Board) and Illinois Department of Labor (Department), appeal from an order of the circuit court of Winnebago County, entered in an administrative review proceeding, which reversed the Board's determination that plaintiff, Theo Komarec, was not qualified for unemployment-insurance benefits under the provisions of section 601(A) of the Unemployment Insurance Act (Ill. Rev. Stat. 1981, ch. 48, par. 431(A)). Defendants argue that the trial court's order must be reversed because the Board's prior determination that plaintiff left work without good cause attributable to his employer is supported by substantial evidence in the record. We affirm.

Plaintiff had been employed as a $12-per-hour machinist with the

Kotter Transmission Company before he was laid off. He filed a claim for unemployment-insurance benefits with the Division of Unemployment Insurance.

In April 1983, while collecting benefits, Komarec registered with the Norrell Service Company (Norrell), a temporary placement service, in order to supplement his employment benefits. For the first two months plaintiff received two temporary assignments, totaling 13 hours of work. On June 10, 1983, Norrell assigned plaintiff to Camcar Industries (Camcar), in the position of laborer, to substitute for a vacationing employee. Plaintiff's employment at Camcar continued for approximately four weeks at a wage of $3.35 per hour. While assigned to Camcar plaintiff was considered an employee of Norrell and received his checks from Norrell. At the end of this period Camcar offered plaintiff an additional week of employment. He refused, however, stating that he would be gone for seven to ten days on his annual fishing trip. He told Camcar, as well as Norrell, that he would be available for work on his return. When plaintiff returned from his trip he continued to receive calls from Norrell regarding possible employment.

Plaintiff did not apply for unemployment benefits for the week he was gone. He subsequently applied for and received weekly benefits from July 17 through August 13, 1983. Norrell filed an Employer Notice of Possible Ineligibility with the Department of Labor, Division of Unemployment Insurance, stating on the form that plaintiff "[q]uit voluntarily for personal reasons." The claims adjudicator determined that on July 8, 1983, plaintiff left work at Norrell "voluntarily without good cause attributable to the employer" and found plaintiff ineligible for benefits during the period July 17 through August 13, 1983.

Thereafter plaintiff filed a notice of reconsideration and appeal from the claims adjudicator's decision to the referee. During a hearing on plaintiff's appeal, plaintiff testified that his work at Camcar was "very boring and tedious," the wages he received from Norrell began at $4.75 but were later reduced to $3.35, and that the benefits at Norrell were "nil." He further testified that he did not "quit" Camcar; he merely advised them he would be gone several days and stated, "I will be back. I will be available for work ***." After the hearing the referee affirmed the claims adjudicator's decision that plaintiff's reason for leaving work was a personal reason not in any respect attributable to the employer and, thus, plaintiff left work voluntarily without good cause.

Thereafter plaintiff filed a notice of appeal to the Board of Review. The Board found that the referee's findings of fact and decision

were supported by the record and law and affirmed the referee's decision.

On administrative review the circuit court of Winnebago County reversed and found that the work offered plaintiff was unsuitable within the meaning of section 603 of the Unemployment Insurance Act (Ill. Rev. Stat. 1981, ch. 48, par. 433) and *Crocker v. Department of Labor* (1984), 121 Ill. App. 3d 185. The court also found the decision of the Department to be against the manifest weight of the evidence.

The issue in this appeal is the validity of the Board's initial determination that Komarec was ineligible for unemployment-insurance benefits because he voluntarily left work without cause. Section 601(A) of the Unemployment Insurance Act provides in relevant part:

"An individual shall be ineligible for benefits for the week in which he has left work voluntarily without good cause attributable to the employing unit and, thereafter, until he has become reemployed ***." Ill. Rev. Stat. 1981, ch. 48, par. 431(A).

■■■ Our function on review of the Board's determination is limited to ascertaining whether its finding of facts are sustained by the evidence (*Yadro v. Bowling* (1980), 91 Ill. App. 3d 889.) It is axiomatic that an agency's findings concerning factual questions are *prima facie* true and correct and the agency's decision should not be disturbed on review unless it is contrary to the manifest weight of the evidence (Ill. Rev. Stat. 1981, ch. 110, par. 3—110). (*Gregory v. Bernardi* (1984), 125 Ill. App. 3d 376, 381; *Crocker v. Department of Labor* (1984), 121 Ill. App. 3d 185, 189; *Thompson v. Board of Review* (1983), 120 Ill. App. 3d 1, 4.) If the issue merely involves conflicting testimony and the credibility of the witness, the agency's determination should be upheld. (*Gregory v. Bernardi* (1984), 125 Ill. App. 3d 376, 383.) Also, given its limited function in an unemployment-compensation case, the judiciary will not reweigh the evidence adduced at its administrative hearing (*Sheff v. Board of Review* (1984), 128 Ill. App. 3d 347, 350; *Thompson v. Board of Review* (1983), 120 Ill. App. 3d 1, 4) or substitute its judgment for that of the agency unless the administrative findings are without substantial support in the record (*Gregory v. Bernardi* (1984), 125 Ill. App. 3d 376, 381; see *James v. Department of Labor* (1983), 119 Ill. App. 3d 524, 527). (See *Clark v. Board of Review* (1984), 126 Ill. App. 3d 559, 562.) A finding is against the manifest weight of the evidence if an opposite conclusion is clearly evident. (*Doran v. Department of Labor* (1983), 116 Ill. App. 3d 471, 474; *Meyers v. Illinois Department of Public Aid* (1983), 114 Ill. App. 3d 288, 291; see *Thompson v. Board*

*of Review* (1983), 120 Ill. App. 3d 1, 5; *Clark Oil & Refining Corp. v. Golden* (1983), 114 Ill. App. 3d 300, 308.) However, if, after reviewing all the evidence, the appellate court determines that the administrative decision was erroneous, it has a duty to reverse the agency's determination. *Sheff v. Board of Review* (1984), 128 Ill. App. 3d 347, 350.

■■ ■ The cardinal purpose of the Unemployment Insurance Act (Ill. Rev. Stat. 1981, ch. 48, par. 300 *et seq.*) is to provide compensation benefits to unemployed individuals in order to alleviate their economic distress that was occasioned by involuntary unemployment. (*Wadlington v. Mindes* (1970), 45 Ill. 2d 447, 452, *appeal dismissed* (1970), 400 U.S. 935, 27 L. Ed. 2d 242, 91 S. Ct. 252; *Clark v. Board of Review* (1984), 126 Ill. App. 3d 559, 561; *Lipman v. Board of Review* (1984), 123 Ill. App. 3d 176, 179.) The receipt of unemployment-insurance benefits in this State is a conditional right, and a claimant bears the burden of establishing eligibility before the agency. (*Clark v. Board of Review* (1984), 126 Ill. App. 3d 559, 561; *Lipman v. Board of Review* (1984), 123 Ill. App. 3d 176, 181; *Crocker v. Department of Labor* (1984), 121 Ill. App. 3d 185, 188; *Thompson v. Board of Review* (1983), 120 Ill. App. 3d 1, 7; *James v. Department of Labor* (1983), 119 Ill. App. 3d 524, 527.) In order to be eligible for benefits, however, claimant must satisfy the terms and conditions the Unemployment Insurance Act prescribes. (*Clark v. Board of Review* (1984), 126 Ill. App. 3d 559. 561.) In the present case, the Board merely adopted the referee's findings of fact that plaintiff left work to take a fishing trip and, thus, was ineligible for benefits. The referee's decision made no reference to the nature of the work offered by Camcar.

On appeal defendants contend that plaintiff left work solely because the job Camcar offered him interfered with his annual fishing trip. It is apparent that the defendants focused only on one of plaintiff's reasons for leaving the job when analyzing whether plaintiff was eligible for unemployment benefits. A further issue also warranted consideration, however, namely whether designation of the job as unsuitable would have allowed payment of benefits to plaintiff even if unsuitability were not the only reason he left the position. We have considered the issue and conclude that the referee applied an incorrect interpretation of section 601(B)(5). We believe that the plain meaning of the statute militates against the agency's conclusion.

An examination of the other provisions of section 601(B) indicates by their wording that all of the factual situations set forth, with the exception of section 601(B)(5), must constitute the actual and immediate reason for leaving the job. In contrast, section 601(B)(5) read to-

gether with the introductory section states:

"The provisions of this Section shall not apply to an individual who has left work voluntarily:

\* \* \*

Which he had accepted after separation from the other work, and the work which he left voluntarily would be deemed unsuitable under the provisions of Section 603." Ill. Rev. Stat. 1981, ch. 48, par. 431(B)(5).

■ It is clear that the Unemployment Insurance Act must be construed liberally for the benefit of unemployed workers. (*Davis v. Board of Review* (1984), 125 Ill. App. 3d 67, 72.) Construing the Act liberally, we interpret section 601(B)(5) as applying not only in situations where the only reason for voluntary departure from a job was its unsuitability, but also where the unsuitable nature of the work was already apparent under the provisions of section 603. We also conclude that the trial court properly found that plaintiff met the burden of establishing eligibility under section 601(B)(5) of the Unemployment Insurance Act (Ill. Rev. Stat. 1981, ch. 48, par. 431(B)(5)).

First, it is undisputed that plaintiff accepted employment at Norrell after separation from his employment at Kotter Transmission. Second, and contrary to defendants' contention that the record does not contain sufficient evidence to support a finding that plaintiff's work was unsuitable, plaintiff's Application for Reconsideration stated six reasons why the claims adjudicator's decision should be reversed:

"(1) part-time employment; would have worked *maybe* one more week;

(2) unsuitable work for my skills;

(3) very unsuitable pay for what I was getting from the job I am layed off [*sic*] at;

(4) no raise after three months with company;

(5) no benefits with company; and

(6) people working at [Camcar] getting two or three times amount of pay for same work I was doing."

In addition, plaintiff testified at the hearing that for the past five years he was employed as a skilled, union-certified steel machinist. Plaintiff's employment at Camcar through Norrell was as a laborer, a job which plaintiff described as boring and tedious.

■ It is well settled that a claimant is justified in refusing employment where the job offers a level of skill not commensurate with previous employment, depending on the circumstances in each case. (*Crocker v. Department of Labor* (1984), 121 Ill. App. 3d 185.) Good

cause for refusing work must involve circumstances which are real, substantial, and reasonable, not arbitrary, immaterial or capricious. (*Thompson v. Board of Review* (1983), 120 Ill. App. 3d 1.) Additionally, a claimant is entitled to benefits for a reasonable period of time to enable him to seek work at a level of skills and a rate of pay commensurate with his or her previous employment. *Keystone Steel & Wire Division, Keystone Consolidated Industries v. Department of Labor* (1976), 37 Ill. App. 3d 704.

In this regard plaintiff testified that as a machinist he earned $12 per hour. At Norrell plaintiff earned $3.35 per hour, a reduction of 72%. In *Crocker*, this court found that an approximately 30% pay reduction rendered work unsuitable. (*Crocker v. Department of Labor* (1984), 121 Ill. App. 3d 185, 189.) See also *Keystone Steel & Wire Division, Keystone Consolidated Industries v. Department of Labor* (1976), 37 Ill. App. 3d 704, 708.

■ Loss of fringe benefits in the form of medical insurance, holiday pay, and sick pay could also render subsequent employment unsuitable. (*Mangan v. Bernardi* (1985), 131 Ill. App. 3d 1081.) At the hearing plaintiff testified that "the benefits are nil, nothing, I have no health insurance, dental insurance just no benefits whatsoever. $3.35 sir, I can not live on that at all." From this testimony the trial court could infer that plaintiff's employment at Kotter Transmission Company provided the benefits he alluded to so as to find that plaintiff raised the issue of lack of benefits in the context of differences between his past and present employment. Specifically, plaintiff indicated that he received two weeks vacation at his former employment. At Norrell the benefits are "nil." This disparity in benefits, as held in *Mangan*, rendered plaintiff's subsequent employment unsuitable.

Finally, section 603 provides in part:

"Notwithstanding any other provisions of this Act, no work shall be deemed suitable and benefits shall not be denied under this Act to any otherwise eligible individuals for refusing to accept new work under any of the following conditions:

*** if the wages *** are substantially less favorable to the individual than those prevailing for similar work in the locality ***." Ill. Rev. Stat. 1981, ch. 48, par. 433.

■ Plaintiff testified that though he was making $3.35 per hour, Camcar hired persons "off the street" at $7.01 per hour to perform the same job. Because Camcar paid $7.01 for the job plaintiff performed, the inference could be drawn that this was the prevailing wage in the locality. Since plaintiff's wage of $3.35 per hour was less than half of the prevailing wage, we believe the trial court correctly

found plaintiff's subsequent work unsuitable.

We conclude that the trial court properly found that the offered work was unsuitable within the meaning of the statute and under *Crocker*. We believe that the Board's decision was therefore against the manifest weight of the evidence and that the circuit court correctly reversed that decision.

Plaintiff's claim for unemployment benefits should be granted and the judgment of the circuit court of Winnebago County is affirmed.

Affirmed.

HOPF and REINHARD, JJ., concur.