SUSAN B. LESTER, Plaintiff-Appellant, v. THE DEPARTMENT OF EMPLOYMENT SECURITY *et al.*, Defendants-Appellees.

First District (3rd Division)    No. 1—03—1479

Opinion filed November 17, 2004.

John P. Madden, of O'Malley & Madden, P.C., of Chicago, for appellant.

Timothy M. Kelly and Christina D. Daskas, both of Beerman, Swerdlove, Woloshin, Barezky, Becker, Genin & London, of Chicago, for appellee Purity Supermarketing, Inc.

Lisa Madigan, Attorney General, of Chicago (Carol A. Cera, Assistant Attorney General, of counsel), for other appellees.

JUSTICE SOUTH delivered the opinion of the court:

Plaintiff Susan Lester filed a claim for unemployment benefits with the Illinois Department of Employment Security (IDES). After her claim was denied by an adjudicator and a referee, plaintiff appealed to the Board of Review (Board), which affirmed these decisions, stating that plaintiff was ineligible for benefits because she failed, without good cause, to accept suitable work offered by her former employer under section 603 of the Illinois Unemployment Insurance Act (Act) (820 ILCS 405/603 (West 2000)). On administrative review,

the circuit court affirmed the Board's decision. On appeal, plaintiff contends that the circuit court erred in affirming the Board's decision, as the Board's decision was based on manifestly erroneous factual findings and errors of law.

The following facts are undisputed. Plaintiff worked as a diverting coordinator for Purity Supermarketing, Inc. (Purity), for 7½ years. She worked out of a regional office located in a K mart store 1.3 miles from her home. On May 23, 2001, her position was eliminated for financial reasons. Prior to her termination, she had taken maternity leave, but she had returned to work in April 2001 and was working 35 hours per week at a salary of $70,200 per year. Between April and May 23, 2001, there was not enough work for plaintiff due to changes within the K mart structure and her hours gradually diminished until she was only working three days per week at a lower salary. Upon plaintiff's termination, Purity gave her severance pay from May 23, 2001, through September 23, 2001, totaling $25,800. On July 18, 2001, Daniel Davis, director of partnership programs for Purity, offered plaintiff a position at Purity's other headquarters working out of a Dominick's supermarket, which was located 30 miles from her home. The offer included an annual salary of $70,200, plus benefits. Plaintiff refused the position.

On November 6, 2001, plaintiff filed for unemployment insurance. In her application for benefits, plaintiff stated that, although she felt she was competent to fill the job offered to her, she refused it because the salary was insufficient, as her workload would have increased two to three times, required farther travel to and from work, required her to supervise a staff, and did not include guaranteed quarterly bonuses. Karen McGrath, Purity's human resource representative, filed a response that the job offered to plaintiff was not substantially different from her former position, e.g., it was within 30 minutes of her old office, required 40 hours of work per week, paid $70,200 per year, plus two quarterly bonuses, and included insurance and all other benefits. In addition, McGrath stated that $50,000 to $60,000 per year was the standard salary for similar employment.

An IDES claims adjudicator denied plaintiff's claim for unemployment insurance pursuant to section 603 of the Act, finding that the work offered to plaintiff was suitable and her refusal of work was without good cause. The adjudicator specifically found that plaintiff's refusal of work stemmed from her belief that the offered salary and bonus was insufficient, even though it was comparable to her former salary and was reasonable for prevailing wages in the industry and location.

Plaintiff filed a motion for reconsideration, arguing that the new

position would have increased her work hours from 35 to at least 40 hours per week, required her to act as a manager, as she was told that she would be the "lead person," with one to two people working for her, her distance from work would have increased, and her workload would have increased by two to three times. The adjudicator denied the motion for reconsideration.

Plaintiff then appealed to an IDES referee. During a telephone hearing on January 11, 2002, plaintiff testified that the position Davis offered her based out of Dominick's at $70,200, plus benefits, was similar to her former position out of K mart, except that it required her to work five days, at least 40 hours per week, and to manage at least one person. Plaintiff told Davis that she wanted her bonus rolled into her salary and a salary adjustment because of her experience, since she would have increased management responsibilities and she would have to travel farther to and from work. Davis denied her request.

Davis testified that he was the director of partnership programs at Purity. Purity valued plaintiff's work at K mart and needed someone strong in the lead coordinator's position at Dominick's, so it offered her the job. The position included an annual salary of $70,200 and guaranteed third- and fourth-quarter bonuses of $4,000 each, even though a typical lead coordinator at Purity would only earn a maximum of $54,000 per year. In addition, one person would work under plaintiff. Davis then read and summarized the duties of the lead coordinator and diverting coordinator positions, stating that the only difference between them was that the lead coordinator served as the primary liaison between the company's diverting supervisor and the partnership account. Since a typical lead coordinator's maximum salary was $54,000, the $72,000 offer was extremely generous.

Plaintiff responded that there may have been a misunderstanding because she interpreted "lead coordinator" to be a management position.

The referee affirmed the adjudicator's decision, finding that the work offered to plaintiff was suitable and her refusal of work was without good cause. Plaintiff was offered a comparable salary and benefits, the distance of travel was not excessive, the area she would have been assigned to was local and accessible by local highways, her travel time would have been less than one hour, and the added responsibility of liaison would not have been unduly burdensome, as plaintiff had experience in the field and was considered competent.

Plaintiff appealed the referee's decision to the Board. Plaintiff argued that she refused the job because: she was told the new position was a management position; several people would have reported to

her; she would have been responsible for the total "volume" at the account; her bonuses would have been based on the performance of all Purity employees at the account; and there would have been no salary increase.

The Board affirmed the referee's decision. On administrative review, the circuit court affirmed the decision of the Board.

On appeal, plaintiff contends that the circuit court erroneously accepted the Board's decision, which was based on manifestly erroneous factual findings and errors of law. Plaintiff specifically contends that she lost her former job through no fault of her own, she had been out of work for only a short time when she refused the job, she rejected Davis's offer in good faith, as she did not have the management skills necessary to perform the job, and the new position would have increased her work volume and hours without increased pay.

■ This court's function on review is to determine whether the Board's findings of fact are sustained by the evidence. *Komarec v. Illinois Department of Labor*, 144 Ill. App. 3d 1105, 1108 (1986). The administrative agency's findings of fact are deemed *prima facie* true, and the question on review is whether the agency's findings and decisions are against the manifest weight of the evidence, except that a question of the agency's determination of law is reviewed *de novo. City of Belvidere v. Illinois State Labor Relations Board*, 181 Ill. 2d 191, 204-05 (1998). "An administrative agency decision is against the manifest weight of the evidence only if the opposite conclusion is clearly evident." *Abrahamson v. Illinois Department of Professional Regulation*, 153 Ill. 2d 76, 88 (1992). A reviewing court will not find that an administrative decision contravenes the manifest weight of the evidence unless no rational fact finder could agree with such decision after reviewing the evidence in the light most favorable to the defendant. *Kalita v. White*, 342 Ill. App. 3d 796, 807 (2003). It is not the judiciary's function to reweigh the evidence adduced at the administrative hearing or to substitute its judgment for that of the agency unless the agency's findings are substantially unsupported by the record. *Komarec*, 144 Ill. App. 3d at 1108.

■ Section 603 of the Act provides, in relevant part:

"An individual shall be ineligible for benefits if he has failed, without good cause, *** to accept suitable work when offered him by the employment office or an employing unit ***. ***

In determining whether or not any work is suitable for an individual, consideration shall be given to the degree of risk involved to his health, safety, and morals, his physical fitness and prior training, his experience and prior earnings, his length of unemployment and prospects for securing local work in his custom-

ary occupation, and the distance of the available work from his residence." 820 ILCS 405/603 (West 2000).

■ The Act must be construed liberally for the unemployed worker's benefit. *Komarec*, 144 Ill. App. 3d at 1110. The burden of proving eligibility for unemployment insurance rests with the claimant. *Mangan v. Bernardi*, 131 Ill. App. 3d 1081, 1084 (1985). To be eligible for unemployment compensation, a claimant must show that he is ready and willing to accept suitable work. *Crocker v. Department of Labor*, 121 Ill. App. 3d 185, 188 (1984). A claimant who refuses a job offer with suitable wages and conditions is not deemed involuntarily unemployed, but unemployed by his own choosing, thereby making him ineligible for unemployment compensation. *Perkins v. Board of Review*, 137 Ill. App. 3d 892, 895 (1985) (plaintiff's refusal of work on the condition that it must include 50% administrative functions, as did her previous job, was unreasonable, as it was within her field of professional training and had a higher rate of pay).

A claimant must manifest good-faith behavior consistent with a general desire to be employed. *Behling v. Department of Labor*, 171 Ill. App. 3d 804, 809 (1988) (claimant not required to accept offer of employment where he was never told what his pay, benefits or job duties would be). A refusal to work must be supported by real, substantial, and reasonable circumstances (*Behling*, 171 Ill. App. 3d at 809) and cannot be predicated on mere inconvenience (*Thompson v. Board of Review*, 120 Ill. App. 3d 1, 3 (1983)). "Good cause" to refuse work may be found in reasons connected with the employer, the claimant's personal circumstances, or the claimant's unsuitability for a particular job and should be judged by the reasonableness of the claimant's actions in light of the circumstances of his individual case. *Eddings v. Department of Labor*, 146 Ill. App. 3d 62, 66-67 (1986).

■ Here, the evidence showed that Purity offered plaintiff $70,200 per year, benefits and guaranteed bonuses, which was more than a typical lead coordinator at Purity, who earned a maximum of $54,000 per year, would earn. Plaintiff had experience in the field and she and Davis agreed that she was competent to fill the position. The additional travel time, working 40, instead of 35, hours per week, and the added liaison responsibility did not make the offered position unsuitable. This evidence supports the Board's determination that the work offered to plaintiff was suitable and that her refusal of work was without good cause.

The cases cited by plaintiff are distinguishable, in that they involve circumstances where the jobs offered to the claimants were not commensurate with the skill levels and pay rates of their previous jobs. See, *e.g.*, *Eddings*, 146 Ill. App. 3d at 67 (plaintiffs, who previously

had full-time employment, were entitled to unemployment insurance where they were offered day-to-day substitute teaching positions at a 40% reduction in pay); *Komarec*, 144 Ill. App. 3d at 1111 (offer of employment unsuitable where the claimant was to receive no benefits and earn 72% less than he previously made); *Mangan*, 131 Ill. App. 3d at 1084-85 (claimant had good cause to refuse part-time offer of employment where her income would be substantially reduced, she would not receive medical insurance, and she was actively seeking other employment options); *Crocker*, 121 Ill. App. 3d at 189-90 (offer of unskilled position to skilled claimant was unsuitable where it paid him 30% less an hour than he previously earned and he had been unemployed for only 12 weeks). In this case, the skill level and pay rate of plaintiff's previous position and the new position offered to her were not disparate. The position offered to plaintiff did not require her to perform tasks beyond her skill or competency level and her rate of pay actually increased, as she was offered the same salary, plus two guaranteed quarterly bonuses, and benefits. Therefore, we find no reason to disturb the Board's decision, as it was not against the manifest weight of the evidence.

Accordingly, the judgment of the circuit court is affirmed.

Affirmed.

HARTMAN and HOFFMAN, JJ., concur.