ESTELLA GALARZA, Plaintiff-Appellee, v. THE DEPARTMENT OF LABOR, Defendant-Appellant.

Second District   No. 2—87—0186

Opinion filed December 3, 1987.—Rehearing denied April 13, 1988.

164

Neil F. Hartigan, Attorney General, of Springfield (Roma Jones Stewart and Shawn W. Denney, Solicitors General, and Cynthia M. Bretthauer and Jill A. Deutsch, Assistant Attorneys General, of Chicago, of counsel), for appellants.

Vincent H. Beckman and Guadalupe J. Preston, both of Illinois Migrant Legal Assistance Project, and Jeffrey B. Gilbert, of Legal Assistance Foundation of Chicago, all of Chicago, for appellee.

JUSTICE WOODWARD delivered the opinion of the court:

Defendant, the Illinois Department of Labor, appeals the judgment of the circuit court of McHenry County on administrative review, which reversed the decision of defendant's Board of Review (board) that plaintiff was ineligible for unemployment benefits. On appeal, defendant argues that plaintiff failed to file a timely appeal from the referee's decision and that the trial court erroneously determined that plaintiff conducted an adequate work search.

Plaintiff, Estella Galarza, is a migrant farm worker. In March 1982, she was employed at Twin Garden Farms near Harvard, Illinois. She had worked there since 1978. Every spring she had been laid off for a few weeks between crops. On March 29, 1982, she was again laid off, but she knew she would be recalled to work when the next crop was ready. Shortly thereafter, she applied for unemployment benefits with the Department of Labor. She was interviewed at the Department's Woodstock office on April 21, 1982, and was instructed to

return again on May 3, 1982. She returned to the office on May 18, 1982, explaining that she did not appear on May 3 because she lacked transportation and an interpreter. Plaintiff speaks only Spanish. She reported that she had been available to work as of April 11, 1982. She also stated that between April 11 and May 8, she had contacted four potential employers, although she could not remember the name of one firm and could not remember with whom she spoke at the others.

On May 18, 1982, the claims adjudicator found plaintiff ineligible for benefits because she was two weeks late in reporting and because she was without dependable transportation to make an active job search. (See Ill. Rev. Stat. 1985, ch. 48, par. 420(C).) She received a notice of the decision that day. She held onto this notice for approximately two weeks because it was written in English and because she was working long hours harvesting asparagus. According to the affidavits of Phillip Riley, her former attorney, and Solomon Sanchez, a migrant liaison for the Department of Agriculture, she then gave the notice to Sanchez. Sanchez held it until June 16, 1982, when he gave it to Riley. Riley, believing that it was the last day to file a timely appeal from the adjudicator's decision, attempted to file a notice of appeal with the Office of Employment Security that same day. The receptionist told him that the appeal could not be filed without plaintiff's signature. Riley protested that it was the last day to file an appeal and that plaintiff's signature could not be procured that day. The receptionist left momentarily to speak with a claims adjudicator. Upon returning, she again informed Riley that the appeal could not be filed without plaintiff's signature, adding that there would be no problem with the deadline if the appeal were postmarked by June 18, 1982. Riley then obtained plaintiff's signature and filed the appeal on June 18, 31 days after the claims adjudicator's decision was rendered.

On June 28, 1982, referee Jeffrey Brochin conducted a hearing. Plaintiff, through an interpreter, testified that she had been looking for vegetable packing and other types of field work during the six weeks she knew she was going to be unemployed. She knew she would be recalled to work by Twin Garden Farms and sought work only for the interim period. She submitted a new list of potential employers whom she had contacted. Plaintiff also testified that she generally had transportation available to look for work. Her husband, her father-in-law, and a co-worker would drive her to potential employers. She did not appear on the May 3, 1982, reporting date primarily because she was confused by the claim forms.

On July 30, 1982, the hearing referee found plaintiff ineligible for benefits because of her failure to file a timely appeal. Plaintiff timely

appealed the referee's decision to the board. On June 17, 1983, the board remanded the matter for rehearing, finding that the record did not contain sufficient evidence regarding the timeliness of the appeal and plaintiff's compliance with the eligibility and availability for work requirements of "An Act in relation to a system of unemployment insurance" (Unemployment Insurance Act or Act) (Ill. Rev. Stat. 1985, ch. 48, pars. 420(B), (C)). Pursuant to the board's order, referee Michael McLean held a hearing on July 25, 1983. Plaintiff, as well as Riley and Sanchez, testified. Plaintiff explained that she failed to report on May 3, 1982, because she lacked transportation or an interpreter and because she was confused by the claim forms. The referee issued his decision August 5, 1983, finding that plaintiff was ineligible for benefits because she failed to show that "the work search conducted was reasonably designed for a return to the permanent fulltime labor force." The referee found:

> "The Claimant stated she had been laid off for periods of 6-8 weeks when in preceding summers she worked for this Twin Garden Farms employer, and expected to return to work there. She further states she would have returned when she was recalled to work at Twin Garden Farms even if she had found other temporary full-time work. Further, the Claimant is without transportation of her own and reliable transportation necessary to get to and from prospective work sites at other outlying farms was unavailable to her."

The referee also found that plaintiff had filed a timely appeal from the May 18, 1982, adjudicator's decision. The board affirmed the referee's decision on March 28, 1984.

Plaintiff filed a complaint for review pursuant to the Administrative Review Law (Ill. Rev. Stat. 1985, ch. 110, par. 3—101 et seq.) in the circuit court of McHenry County on May 1, 1984. The court reversed the decision of the board, finding the plaintiff had, in fact, made 17 job contacts and that, because she was on a temporary layoff, she was not required to seek work elsewhere. Defendant appeals.

On appeal, defendant argues that the circuit court was without jurisdiction to hear plaintiff's complaint because she failed to file a timely appeal from the claims adjudicator's denial of benefits and, even if the circuit court had jurisdiction, it erred in determining that plaintiff conducted an adequate work search. Plaintiff responds that defendant either waived the issue of the timeliness of plaintiff's appeal or is estopped from asserting this defense, and that the circuit court properly found plaintiff eligible for unemployment benefits.

■ Section 800 of the Unemployment Insurance Act gives a

claimant 30 days to appeal an adverse decision of the claims adjudicator. (Ill. Rev. Stat. 1985, ch. 48, par. 470.) The supreme court has held that this provision is equivalent to a statute of limitations. (*Hernandez v. Department of Labor* (1981), 83 Ill. 2d 512, 517.) A statute of limitations is an affirmative defense and is waived on appeal if not presented to the trial court. (*Deem v. Cheeseman* (1983), 113 Ill. App. 3d 876, 881; *Anfinsen Plastic Molding Co. v. Konen* (1979), 68 Ill. App. 3d 355, 361.) In *Louise v. Department of Labor* (1980), 90 Ill. App. 3d 410, 412, the court held that the mandatory time limitations of section 800 are subject to estoppel and waiver.

■■ Plaintiff argues that defendant has waived the statute of limitations defense by failure to argue it in the trial court. The ultimate conclusion of the board affirmed the referee's decision finding that plaintiff's appeal was filed timely. Defendant has not provided us with a report of proceedings or a bystander's report of the hearing before the circuit court. Thus, we have no way of knowing what arguments were presented to that court. The appellant has the burden of providing a complete record, and doubts resulting from the absence of such a record will be held against the appellant. (*Foutch v. O'Bryant* (1984), 99 Ill. 2d 389, 391-92.) We note that the circuit court's written opinion makes no mention of this argument. We therefore find that defendant has waived the issue of the timeliness of plaintiff's appeal.

■■ Defendant next contends that the circuit court erred in reversing the board's decision that plaintiff conducted an inadequate work search. Plaintiff responds that due to the temporary nature of her unemployment, she is not required to look for work or, in the alternative, that her search was adequate under the circumstances.

Initially, both parties agree on the applicable standard of review. The findings and conclusions of an administrative agency on questions of fact are *prima facie* true and correct. (*Flex v. Department of Labor* (1984), 125 Ill. App. 3d 1021, 1023; *Brown v. Board of Review* (1972), 8 Ill. App. 3d 19, 24.) Thus, an appellate court is justified in disturbing an agency's factual determinations only where they are against the manifest weight of the evidence. (*Gregory v. Bernardi* (1984), 125 Ill. App. 3d 376, 379; *Kocourek v. Bowling* (1981), 96 Ill. App. 3d 310, 315-16.) Nonetheless, where a board's findings are not supported by substantial evidence, they will be reversed. (*Ferretti v. Department of Labor* (1985), 137 Ill. App. 3d 246, 248, *aff'd* (1987), 115 Ill. 2d 347.) Furthermore, a reviewing court is not bound to give the same deference to an agency's conclusions of law as to its factual findings. (*Flex*, 125 Ill. App. 3d at 1024.) An erroneous construction of a statute by an agency is not binding on appeal. (*Rosenbaum v.*

*Johnson* (1978), 60 Ill. App. 3d 657, 661.) The Act should be liberally construed in favor of allowing benefits. *Ferretti*, 137 Ill. App. 3d at 248; *Kocourek*, 96 Ill. App. 3d at 316.

■■ ■ The purpose of the Act is to provide benefits for an unemployed person who is willing, anxious, and ready to accept suitable employment. (*Crocker v. Department of Labor* (1984), 121 Ill. App. 3d 185, 188; *Yadro v. Bowling* (1980), 91 Ill. App. 3d 889, 892.) Nonetheless, receipt of unemployment benefits is a conditional right, and the burden of proof rests on the claimant to establish eligibility. (*Yadro*, 91 Ill. App. 3d at 892-93.) In order to be eligible for benefits, the Act requires a claimant to be available for work and to be seeking work actively and report his or her job contacts to the Department. (Ill. Rev. Stat. 1985, ch. 48, par. 420(C).) The phrase "available for work" is designed to test the claimant's current labor-force attachment. (*Mohler v. Department of Labor* (1951), 409 Ill. 79, 83; *Rosenbaum*, 60 Ill. App. 3d at 661.) The words "actively seeking work" cannot be used as a rigid and inflexible standard, but rather they create a standard of reasonableness which must be determined by particular facts and circumstances of each case. (*Mohler*, 409 Ill. at 84-85; *Brown*, 8 Ill. App. 3d at 22.) The important consideration in interpreting both phrases is whether the claimant's behavior manifests a good-faith effort consistent with a general desire to be employed. *Thompson v. Board of Review* (1983), 120 Ill. App. 3d 1, 3.

■ In other words, what constitutes "suitable work" varies with the circumstances. For example, an unemployment claimant is generally not required to accept work which pays substantially less than the job from which he was laid off. (*Keystone Steel & Wire Division, Keystone Consolidated Industries v. Department of Labor* (1976), 37 Ill. App. 3d 704, 706-07.) These principles also apply to one who has been temporarily laid off and has a reasonable expectation of returning to his prior employment. The temporary nature of the layoff affects the type of substitute work which is considered "suitable." Plaintiff argues that it also bears on the duty of the claimant to conduct a work search. Plaintiff contends that, because she was laid off for only a few weeks and reasonably expected to be recalled by Twin Garden Farms, she was not required to conduct a work search, or, in the alternative, was required to apply only for temporary employment. She argues that she is not required to look for or accept permanent full-time employment which would jeopardize her chances of returning to Twin Garden Farms.

Plaintiff cites the Department's own Manual of Benefit Precedent Decision, the relevant portions of which are contained in the record,

which states:

"A seasonal worker who regularly works for one employer or in one industry and who has definite prospects of recall to work may restrict the employment acceptable to him during the off-season to work which will permit him to return to his regular employment when the season begins." (2 Department of Labor, Manual of Benefit Precedent Decisions §AA 450.45 (C).)

The manual also states that if the acceptance of temporary work would jeopardize the claimant's return to her permanent employment, she would be justified in refusing such work, provided she continues an active work search and maintains no other restrictions on her availability for work. (2 Department of Labor, Manual of Benefit Precedent Decisions §AA 450.45(E).) This court has recognized the manual as persuasive authority. *Crocker*, 121 Ill. App. 3d at 189-90; see also *Jones v. Department of Labor* (1986), 140 Ill. App. 3d 699, 701; *Thompson*, 120 Ill. App. 3d at 4.

Other decisions have stated that a worker on temporary layoff is justified in restricting his work search. In *Rosenbaum v. Johnson* (1978), 60 Ill. App. 3d 657, 661, the court noted that a board ruling that a claimant must be available for full-time work *per se* was inconsistent with the flexible standard noted above. In *Keystone Steel & Wire Division, Keystone Consolidated Industries v. Department of Labor* (1976), 37 Ill. App. 3d 704, 708, the court held that alternate work is not necessarily "suitable" where a reasonable possibility exists of the claimant being recalled to his previous job. In *Berthiaume v. Christgau* (1944), 218 Minn. 65, 70, 15 N.W.2d 115, 118, the court noted that "if an applicant presents sufficient evidence to establish as a fact that there are prospects of returning to work in his own trade within a reasonable time, then work in some other trade for which he should otherwise be available and which would otherwise be deemed suitable becomes unsuitable." In *Brown v. Board of Review* (1972), 8 Ill. App. 3d 19, 24, the court stated that the disqualification from benefits of one who makes no effort to look for work could not apply "to an individual *** on a layoff of short duration. He should not be expected to seek work elsewhere."

■ While we do not necessarily agree with the *Brown* court that a claimant who has been temporarily laid off need not conduct any work search, the principles noted above are relevant in determining the scope of the search plaintiff in the instant case was required to make. Both the hearing referee and the circuit court found that plaintiff made at least 16 job contacts during a four-week period. Although several of these appeared only on an informal list just prior to the

trial, this is not significant. (See *Ferretti*, 137 Ill. App. 3d at 248, *aff'd* (1987), 115 Ill. 2d 347.) The referee nonetheless concluded that plaintiff had not made a work search which was reasonably designed to return her to the "permanent, full-time labor force." The circuit court, citing *Brown*, concluded that plaintiff did actively seek work, given the limited work search that was required. It seems clear that the referee and the board applied the wrong legal standard. The finding that plaintiff was required to seek permanent, full-time employment is inconsistent with the flexible standard of *Mohler* and *Brown*.

The question remains whether the circuit court was correct in determining that plaintiff's efforts were sufficient under the circumstances. The court found that plaintiff made 17 job contacts during the four weeks in question. Plaintiff testified without contradiction that job opportunities in the Harvard-Woodstock area were limited. In *Ferretti v. Department of Labor* (1985), 115 Ill. 2d 347, 353-54, the supreme court held the board's finding that a claimant who made 48 job contacts in a 24-week period had conducted an inadequate search was against the manifest weight of the evidence, where the claimant testified that job opportunities in his field were extremely limited.

Defendant complains that many of plaintiff's contacts were with the same prospective employers. Defendant cites no authority for the proposition that these multiple contacts were somehow invalid. (See *Ferretti*, 115 Ill. 2d at 353 (several of the 48 contacts were of an extremely informal nature, *e.g.*, with friends).) Defendant points out that the referee also found that plaintiff lacked reliable transportation to conduct an effective job search. The only evidence supporting this conclusion was plaintiff's somewhat equivocal testimony that she missed the May 3, 1982, appointment in part because she lacked transportation. On the other hand, she testified without contradiction that she generally had transportation available in the form of her husband's car and that her husband, her father-in-law, and a co-worker were willing to drive her to prospective employers. She did have sufficient transportation available to make 16 or 17 job contacts. In *Thompson v. Board of Review* (1983), 120 Ill. App. 3d 1, 6, this court reversed the board's denial of benefits to a claimant who missed an interview because she lacked funds to buy gas. The exact issue under consideration was addressed by the Maryland Court of Appeals. That court held that a claimant who testified that her landlady was willing to drive her to out-of-town interviews was eligible for benefits and the State agency's finding to the contrary was against the manifest weight of the evidence. (*Employment Security Administration, Board of Appeals v. Smith* (1978), 282 Md. 267, 383 A.2d 1108.) The

trial court did not err in refusing to credit the board's finding on this issue.

In summary, the defendant has waived the statute of limitations issue by failing to raise it before the trial court. The hearing referee applied an improper legal standard in determining that plaintiff was required to seek permanent employment, and the circuit court did not err in finding the plaintiff's work search was adequate on the particular facts of this case. The board's conclusion that plaintiff lacked transportation to make an adequate work search was against the manifest weight of the evidence. Thus, the circuit court was correct in reversing the finding of the board that plaintiff was ineligible for unemployment benefits. Its judgment is, therefore, affirmed.

Affirmed.

HOPF and DUNN, JJ., concur.