MEDICAL DISPOSAL SERVICES, INC., *et al.*, Petitioners-Appellants, v. THE ENVIRONMENTAL PROTECTION AGENCY *et al.*, Respondents-Appellees.

First District (4th Division)    Nos. 1—95—2892, 1—95—2908 cons.

Opinion filed September 18, 1996.—Rehearing denied March 5, 1997.—Modified opinion filed March 6, 1997.

Chuhak & Tecson, P.C., of Chicago (Donald J. Russ, Jr., Alan R. Dolinko, and Thomas F. Bennington, Jr., of counsel), for petitioner Medical Disposal Services, Inc.

Gessler, Hughes & Socol, Ltd., of Chicago (Mark A. LaRose and Michael J. Klein, of counsel), for petitioner Industrial Fuels & Resources/Illinois, Inc.

James E. Ryan, Attorney General, of Chicago (Barbara A. Preiner, Solicitor General, and Susan Frederick Rhodes, Assistant Attorney General, of counsel), for respondents Pollution Control Board and Environmental Protection Agency.

Sorling, Northrup, Hanna, Cullen & Cochran, Ltd., of Springfield (James M. Morphew and Charles J. Northrup, of counsel), for National Solid Wastes Management Association, Illinois Chapter.

JUSTICE CERDA delivered the opinion of the court:

Petitioners, Medical Disposal Services, Inc., an Illinois corpora-

tion (MDS), and Industrial Fuels and Resources/Illinois, Inc., an Illinois corporation (Industrial Fuels), appeal from the denial of permits by respondents, the Pollution Control Board (the Board) and the Environmental Protection Agency (the Agency), for MDS to construct a medical-waste-treatment facility. Petitioners argue on appeal that (1) the Board erred in granting summary judgment in favor of the Agency because local siting approvals of pollution-control facilities are transferable to purchasers; (2) the Board should have applied equitable estoppel or equitable tolling; and (3) the Board erred in denying Industrial Fuels' petition for intervention. We affirm.

The main issue in this case is whether a municipality's siting approval of a pollution-control facility under section 39.2(a) of the Environmental Protection Act (415 ILCS 5/39.2(a) (West Supp. 1995)) is transferable to a subsequent owner on the basis that siting approval is location specific and not applicant specific. In other words, can a person other than the original siting applicant seek a developmental permit for a new pollution control facility?

## I. Facts

In 1989 Industrial Fuels petitioned the City of Harvey, Illinois, for approval of the construction there of a medical-waste-treatment facility, pursuant to a statutory provision giving localities the right to approve the siting of pollution-control facilities. Harvey denied the siting application in 1990, and Industrial Fuels appealed to the Board. The Board affirmed the denial, but this court reversed (*Industrial Fuels & Resources/Illinois, Inc. v. Pollution Control Board*, 227 Ill. App. 3d 533, 592 N.E.2d 148 (1992)).

In 1994 MDS entered into an agreement giving it an option to purchase the Harvey site from Industrial Fuels. MDS had earlier inquired of the Environmental Protection Agency whether MDS could rely on the siting approval that Industrial Fuels had obtained from Harvey. An assistant counsel for the Agency responded in a letter dated January 10, 1994, that, consistent with previous interpretations in similar situations, the Agency's policy remained that siting approval was location specific so that it remained with land upon sale. The letter also stated that the siting approval granted to Industrial Fuels was valid for MDS's development of the facility.

In May 1994 MDS submitted applications to the Agency for permits to construct the facility. In September the Illinois Attorney General's office wrote to MDS that Harvey had not granted local siting approval to MDS. In October the Illinois Attorney General's office wrote a letter to the general counsel for the Agency that its view was that local siting approval was "not only site-specific, but also

facility-specific and applicant-specific." On January 13, 1995, the Director of the Agency wrote to the Attorney General that the two agencies had differing interpretations of the siting approval law, but on January 31 the Agency denied MDS's permit applications.

In March 1995, MDS appealed to the Pollution Control Board and argued that permits could be issued pursuant to section 39(c) of the Environmental Protection Act (415 ILCS 5/39(c) (West 1994)) (the Act), on the basis that the Act required proof to the Agency only that the municipality approved the location of the facility and did not require that the municipality approve the transfer of ownership. MDS filed a motion for summary judgment, and the Agency filed a cross-motion for summary judgment.

On May 4, 1995, the Board denied MDS's motion for summary judgment and granted the Agency's cross-motion for summary judgment. The Board's order found that local siting approval could not be transferred from Industrial Fuels to MDS because siting approval was applicant specific.

On June 8, 1995, Industrial Fuels petitioned to intervene. The Board denied Industrial Fuels' petition because it was filed after the Board's final decision was issued. The Board accepted from Industrial Fuels, as an *amicus curiae* brief, a memorandum of law in support of MDS's motion for reconsideration. The Board denied MDS's motion for reconsideration.

## II. Site Location Approval

Petitioners first argue on appeal that local siting approval of a pollution-control facility under section 39.2(a) of the Act (415 ILCS 5/39.2(a) (West Supp. 1995)) is transferable to a new owner because siting approval is only location specific.

■ Decisions of the Board are reviewed in accordance with the administrative review law. 415 ILCS 5/41(a) (West 1994). The review extends to all questions of law and fact presented by the entire record. 735 ILCS 5/3—110 (West 1994). If the determination of the Board does not involve any factual disputes, and if the case involves solely a question of law, the court is to accord some deference to the agency's interpretation of the Act, but its interpretation is not binding on the court and the court will not uphold erroneous interpretations. *National Environmental Services Corp. v. Pollution Control Board*, 212 Ill. App. 3d 109, 112, 570 N.E.2d 1245 (1991); *City of Decatur v. American Federation of State, County, & Municipal Employees, Local 268*, 122 Ill. 2d 353, 361, 522 N.E.2d 1219, 1222 (1988).

Section 39(c) of the Act provides in relevant part:

"[N]o permit for the development or construction of a new pol-

lution control facility may be granted by the Agency unless the applicant submits proof to the Agency that the location of the facility has been approved by the County Board of the county if in an unincorporated area, or the governing body of the municipality when in an incorporated area, in which the facility is to be located in accordance with Section 39.2 of this Act." 415 ILCS 5/39(c) (West 1994).

Section 39.2(a) provides:

"The county board of the county or the governing body of the municipality *** shall approve or disapprove the request for local siting approval for each pollution control facility which is subject to such review. An applicant for local siting approval shall submit sufficient details describing the proposed facility to demonstrate compliance, and local siting approval shall be granted only if the proposed facility meets the following criteria:

(i) the facility is necessary to accommodate the waste needs of the area it is intended to serve;

(ii) the facility is so designed, located and proposed to be operated that the public health, safety and welfare will be protected;

(iii) the facility is located so as to minimize incompatibility with the character of the surrounding area and to minimize the effect on the value of the surrounding property;

(iv) the facility is located outside the boundary of the 100 year flood plain or the site is flood-proofed;

(v) the plan of operations for the facility is designed to minimize the danger to the surrounding area from fire, spills, or other operational accidents;

(vi) the traffic patterns to or from the facility are so designed as to minimize the impact on existing traffic flows;

(vii) if the facility will be treating, storing or disposing of hazardous waste, an emergency response plan exists for the facility which includes notification, containment and evacuation procedures to be used in case of an accidental release;

(viii) if the facility is to be located in a county where the county board has adopted a solid waste management plan consistent with the planning requirements of the Local Solid Waste Disposal Act or the Solid Waste Planning and Recycling Act, the facility is consistent with that plan; and

(ix) if the facility will be located within a regulated recharge area, any applicable requirements specified by the Board for such areas have been met.

The county board or the governing body of the municipality may also consider as evidence the previous operating experience and past record of convictions or admissions of violations of the

applicant (and any subsidiary or parent corporation) in the field of solid waste management when considering criteria (ii) and (v) under this Section." 415 ILCS 5/39.2(a) (West Supp. 1995).

The transferability issue was touched upon by the Board in *Christian County Landfill, Inc. v. Christian County Board*, Ill. Pollution Control Bd. Op. 89—92 (October 18, 1989). Petitioner landfill company appealed from respondent county board's decision that imposed as a condition, for the approval of the application for the landfill expansion, that any buyer or subsequent owner of the landfill company request the approval of the county board for use of the site.

*Christian County* analyzed section 39.2(e) of the Act, which provided that "[i]n granting approval for a site the county board or governing body of the municipality may impose such conditions as may be reasonable and necessary to accomplish the purposes of this Section and as are not inconsistent with regulations promulgated by the Board." 415 ILCS 5/39.2(e) (West Supp. 1995). The Board found that the statutory criteria did not refer anywhere to future transfer of ownership and that the condition concerning future ownership was not reasonable or necessary to accomplish the purposes of section 39.2. *Christian County*, at 104-375.

*Christian County* did not address the issue whether a subsequent owner had to reapply for local siting approval. The case's determination that a county board could not condition its approval on a future request for approval by a new owner would not be inconsistent with a statutory interpretation that local siting approval has to be reobtained when the facility's ownership changes.

Petitioners also rely on another Board opinion, *Concerned Citizens Group v. County of Marion*, Ill. Pollution Control Bd. Op. 85—97 (November 21, 1985), in which petitioners sought to challenge the local siting approval for a new pollution-control facility. Petitioners in that case argued that the proceedings were fundamentally unfair in part because the applicant company was sold and because the approval of a new pollution-control facility was not transferable. The Board rejected the argument that the sale violated fundamental fairness. *Concerned Citizens*, at 66-427.

Although *Concerned Citizens* did reject an argument that the sale of a proposed pollution-control facility vitiated the local siting approval, the argument was made only in the context of the Board's examination whether the procedures used by the locality were fundamentally fair. The case did not address the issue whether a permit could be granted under section 39(c) of the Act to a different applicant without new local siting approval.

■ Section 39(c) does not expressly provide that the applicant for

the permit must be the same entity that received local siting approval, but reading section 39(c) and section 39.2(a) together, we infer that section 39(c) contemplates that the applicant must be the same entity that had obtained local siting approval. Although section 39(c) refers only to the approval of the location of the facility as a condition required for permit issuance, we find determinative of the transferability issue that section 39.2(a) of the Act permits localities to consider the applicant's previous operating experience. Pursuant to section 39.2(a), which is referenced in section 39(c), localities are to approve not just the site's location and the facility but also the operator of the facility. The last paragraph of section 39.2(a) provides:

"The county board or the governing body of the municipality may also consider as evidence the previous operating experience and past record of convictions or admissions of violations of the applicant *** in the field of solid waste management ***." 415 ILCS 5/39.2(a) (West Supp. 1995).

The provisions of a statute must be construed in light of the entire statute as a whole. *Stone v. Department of Employment Security Board of Review*, 151 Ill. 2d 257, 261, 602 N.E.2d 808 (1992).

The *Christian County* opinion listed the nine statutory criteria that it considered in rendering a decision in the matter. It listed the nine criteria in section 39.2(a) except it omitted and did not consider the last sentence of section 39.2(a). The General Assembly recognized that it was important that a county board or the governing body of a municipality have the opportunity to investigate and examine the past operating history and past record of convictions and violations of an applicant. The importance of site approval was previously recognized in the case of *Kane County Defenders, Inc. v. Pollution Control Board*, 139 Ill. App. 3d 588, 593, 487 N.E.2d 743 (1985), which pointed out:

"This broad delegation of adjudicative power to the county board clearly reflects a legislative understanding that the county board hearing, which presents the only opportunity for public comment on the proposed site, is the most critical stage of the landfill site approval process."

We agree that the local site approval process is the most critical stage of the process. In this case, the Pollution Control Board did take into consideration the last sentence of section 39.2(a) and found that to allow location site approval to be transferred from an applicant to someone else would allow one to bypass the scrutiny of the hearing process at the local level.

Even if the Harvey facility is going to be substantially the same as originally proposed, the ownership has changed. Section 39.2(a)

recognizes the significance of the experience of the owner. Requiring MDS to submit to another review by Harvey will not be needlessly duplicative because it is essential to implement the legislative intent of providing meaningful local approval of the siting of pollution-control facilities. It may be that a change in ownership will not in every case significantly change the operation of a facility, but it is also possible, if not more likely, that the management would change when the ownership changes.

█ Industrial Fuels argues that the legislature did not intend that localities have any involvement after an initial local siting decision is made, but there is one provision in the Act giving localities approval rights after initial approval has been granted: when a facility has not accepted waste disposal for at least five years. 415 ILCS 5/39(c) (West 1994) (local approval is also required for some permits when an operating permit had not been issued prior to a certain date). This provision could permit localities to review a facility for a second time in a situation where the ownership had not changed. With these limited exceptions, localities generally do not have siting approval power after an initial development or construction permit is issued. No such permit had been issued in this case.

The fact that localities do not generally have approval powers in the case of a transfer of ownership after the Agency has issued construction permits does not vitiate this court's statutory interpretation that a new applicant must reobtain local siting approval before applying for a permit under section 39(c). The legislature may have considered that giving post-permit approval rights to localities would adversely delay or prevent the sale of pollution-control facilities. Another possible reason for the legislature's generally different treatment of pre- and post-permit time periods is to prevent an entity with an imperfect history of operating pollution-control facilities from evading the local approval process by arranging to purchase the site after the seller received local siting approval.

Requiring renewed applications for local siting approval does not prevent the transferability of an owner's property right because siting approval is not a property right. See *Foster & Kleiser v. City of Chicago*, 146 Ill. App. 3d 928, 934, 497 N.E.2d 459 (1986) (even permits are only privileges from which no vested property rights attach). Permits in general can conceivably be assigned, but the local siting approval given pursuant to the Act is only a condition that is required before permits can be issued. While a permit gives the holder specified rights, local siting approval only gives the specific applicant the right to apply for a permit.

We hold that local siting approval is applicant specific and is not

transferable to a new permit applicant and that a new applicant must reobtain such approval before permits under section 39(c) can be granted. The Board therefore did not err in granting summary judgment in favor of the Agency and against MDS.

### III. Equitable Estoppel and Equitable Tolling

Petitioners next argue that the Agency should be equitably estopped from denying the permits based on MDS's detrimental reliance on the Agency's letter stating that the local siting approval granted to Industrial Fuels remained valid for MDS.

■ Two of the elements of equitable estoppel are misrepresentation and knowledge that the representation was untrue. *City of Mendota v. Pollution Control Board*, 161 Ill. App. 3d 203, 209, 514 N.E.2d 218 (1987). There were no issues of fact here concerning these two elements. The Agency's letter to MDS gave the Agency's opinion that local siting approval was location specific and that the approval would remain valid for MDS. As the letter gave the Agency's interpretation of the statute and its policy at the time, there were no misrepresentations made. The Agency changed its policy after the letter was written.

More importantly, estoppel would not be appropriate here against a governmental body because it would defeat the statutory intent to give approval powers to localities in a matter concerning public health and safety. See *Tri-County Landfill Co. v. Pollution Control Board*, 41 Ill. App. 3d 249, 255-56, 353 N.E.2d 316 (1976) (no estoppel to preclude agency from charging pollution violations because the people of Illinois would be denied their constitutional right to a healthful environment). We hold that as a matter of law there is no basis to estop the Agency from denying the permits.

■ Petitioners also argue that equitable tolling should be used to toll the two-year expiration period for which local siting approval is valid (415 ILCS 5/39.2(f) (West Supp. 1995)). Petitioners state we should use the date of either the Agency's letter to MDS or MDS's filing its permit applications so that MDS could use the additional time to take alternate measures to comply with section 39(c).

Petitioners rely on *Larrance v. Human Rights Comm'n*, 166 Ill. App. 3d 224, 519 N.E.2d 1203 (1988), in which there was a request for tolling of a period to file charges with an agency. *Larrance*, 166 Ill. App. 3d at 232, held that equitable tolling could be applied to prevent injustice when an administrative agency knowingly misled the complainant or "in some other manner acted unfairly." The court did not give authority for its statement that tolling of a statutory period could apply where an agency acted unfairly. Generally, the doc-

trine of equitable tolling has been applied to toll statutes of limitations. *E.g., Chicago Park District v. Kenroy, Inc.*, 78 Ill. 2d 555, 561, 402 N.E.2d 181 (1980) (concealment of a cause of action may toll a statute of limitations). Equitable tolling cannot be applied to toll the two-year expiration period to obtain local siting approval.

Even if equitable tolling can be applied outside the typical statute of limitations situation to cases where an agency acted unfairly, we decline to make equitable tolling available to MDS. MDS will suffer a delay in seeking to obtain its permits because of the change in the Agency's policy, but MDS was not prevented by the Agency from seeking local siting approval. Unlike cases where tolling would prevent the expiration of a statute of limitations or other mandatory time period, tolling of the two-year approval period will not prevent the permanent expiration of any right. If an expired statute of limitations is not tolled, a plaintiff will not be able to proceed with her case and obtain a remedy. In contrast, here the Agency's conduct did not forever cut off MDS's ability to proceed with the development of the facility. MDS could before, and may still now, seek local siting approval from Harvey.

## IV. Petition to Intervene

Industrial Fuels next argues that the Board erred in denying its petition to intervene.

Industrial Fuels cites Board rule 103.142(a), which provides that, upon timely application, a hearing officer is to permit any person to intervene in an enforcement proceeding when one of two conditions specified is met. 35 Ill. Adm. Code § 103.142(a) (1994). This rule is applicable only to enforcement proceedings and not to the permit application proceedings at issue here. We have found no other administrative rule that gave Industrial Fuels the right to intervene.

Industrial Fuels did not file its petition to intervene until after summary judgment was entered, but it was permitted to file an *amicus curiae* brief in support of MDS's motion for reconsideration. Even if the Board had the authority to permit Industrial Fuels to intervene, and even if it erred in denying the petition to intervene, Industrial Fuels was not harmed because it was able to make its arguments to the Board in its brief. See *Citizens Against the Randolph Landfill (CARL) v. Pollution Control Board*, 178 Ill. App. 3d 686, 693-94, 533 N.E.2d 401 (1988) (there was no prejudice in denying a petition to intervene where the petitioner did not assert that it would have pre-

sented arguments that a party to the proceedings had not already presented).

The judgment of the Board is affirmed.

Affirmed.

TULLY, P.J., and GREIMAN, J., concur.