COMMUNITY LANDFILL COMPANY *et al.*, Petitioners-Appellants, v. THE POLLUTION CONTROL BOARD *et al.*, Respondents-Appellees.

Third District   No. 3—02—0024

Opinion filed May 15, 2002.—Modified on denial of rehearing July 17, 2002.

Michael T. Reagan, of Herbolsheimer, Lannon, Henson, Duncan & Rea-

gan, P.C., of Ottawa, and Mark A. LaRose (argued), of LaRose & Bosco, Ltd., of Chicago, for petitioner Community Landfill Company.

Charles F. Helsten, of Hinshaw & Culbertson, of Rockford, and Scott M. Belt, of Scott M. Belt & Associates, of Morris, for petitioner City of Morris.

James E. Ryan, Attorney General, of Chicago (Joel D. Bertocchi, Solicitor General, and Mary Patricia Kerns (argued), Assistant Attorney General, of counsel), for respondents.

JUSTICE BRESLIN delivered the opinion of the court:

Petitioners Community Landfill Company and City of Morris (collectively, the company) appeal from a decision by respondent Illinois Pollution Control Board (Board) affirming respondent Illinois Environmental Protection Agency's (Agency) denial of the company's application for a waste disposal permit because the surety that provided the previously approved performance bonds was later removed from a United States Department of the Treasury list of approved sureties. We affirm and hold that a permit for waste disposal is appropriately denied if the surety that provides the financial assurance is removed from the list of approved governmental sureties.

## I. FACTS

Community Landfill Company is the operator of a landfill located in Morris, Illinois. The landfill is owned by the City of Morris. The property on which the landfill is located consists of two parcels of land, parcel A and parcel B.

In August of 2000, the Agency issued a significant modification permit to the company that called for the closure of parcel B and authorized the continued operation of parcel A under new landfill regulations. The new regulations required increased leachate collection and control devices as well as the installation of a separation layer. The permit was supported by financial assurance of $17,427,366 guaranteed by bonds issued by Frontier Insurance Company. The permit required that the company file a supplemental permit application in the future to secure approval of the construction of the separation layer and authorize the acceptance of waste for disposal in the newly constructed area located in parcel A.

On November 14, 2000, the Agency sent notice to the company that it was in violation of the Environmental Protection Act (Act) (415 ILCS 5/1 et seq. (West 2000)) because the surety that wrote the bond for the significant modification permit was no longer on the list of approved governmental sureties. Two weeks after receiving this notice, the company filed its supplemental permit application for parcel A.

On May 11, 2001, the Agency denied the company's application for the supplemental permit for two reasons. One was because the surety was no longer on the list of approved government sureties. Specifically, the application was denied for failure to comply with section 811.712(b) of the Illinois Administrative Code (Code) (35 Ill. Adm. Code § 811.712(b) (West CD-ROM 2000)), which requires that the surety company that guarantees the bonds or other financial assurance for a permit be licensed by the Illinois Department of Insurance and approved by the United States Department of the Treasury as an acceptable surety. The Treasury Department lists acceptable sureties in its Circular 570. See 35 Ill. Adm. Code § 811.712(b) (West CD-ROM 2002). The second reason the application was denied was because the owner of the landfill company had a felony conviction record. The company appealed the Agency's decision to the Board, claiming that both reasons for denying the supplemental permit were improper and that the denial amounted to impermissible enforcement by permitting.

At a hearing before the Board, Blake Harris, a financial assurance analyst for the Agency, testified that the bonds were insufficient because the issuing surety, Frontier Insurance Company, had been removed from the Circular 570 list on June 1, 2000.

John Taylor, a former financial assurance analyst for the Agency, testified on behalf of the company. He reviewed the bonds when they were originally submitted by the company in support of the significant modification permit that was issued in August of 2000. According to Taylor, he was aware that Frontier had been removed from the list of approved sureties one day after the company obtained the bonds. He concluded, however, that the bonds met the applicable statutory and regulatory requirements because at the time they were issued Frontier was an approved surety.

At the hearing, the company sought to introduce testimony of several employees of the Agency involved in the permit application process and documents regarding a permit issued to the company on June 29, 2001, for the installation of perimeter gas monitoring probes. After an offer of proof was made, the hearing officer excluded the evidence, finding that it was not part of the record before the Agency when the permit application was considered and thus could not be considered by the Board on appeal. Thereafter, the company filed an objection to the officer's decision to exclude the evidence and to an earlier decision not to allow a separate evidentiary hearing regarding the matter.

In December of 2001, the Board issued an opinion and order affirming the denial of the supplemental permit on the basis that the surety which issued the bonds was not on the approved list of sureties.

In addition, the Board affirmed the hearing officer's exclusion of testimony and documents regarding the grant of the June 29, 2001, permit and the hearing officer's decision to deny a separate hearing. The Board, however, reversed the Agency's decision to use the felony conviction as a basis to deny the permit and rejected the company's claims of equitable estoppel, inadequate notice, and improper enforcement through permitting. The company appealed.

Additional facts will be provided as they become pertinent to the analysis.

## II. ANALYSIS

■ The company complains that the Board erred when it affirmed the Agency's denial of its supplemental permit application and when it affirmed the hearing officer's decision to exclude evidence. The company also complains that the Board failed to address several issues relating to the felony conviction. We will reverse the Board's decision only if it is against the manifest weight of the evidence. *ESG Watts, Inc. v. Pollution Control Board*, 286 Ill. App. 3d 325, 676 N.E.2d 299 (1997).

The company's main argument is that the Board erred in affirming the Agency's denial of the permit. The company claims that the denial of the permit was improper because the bonds were valid and enforceable, the company failed to receive reasonable advance notice and an opportunity to respond before the permit was denied, the denial was an impermissible use of the permitting process as an enforcement tool, and the Agency should have been estopped from rejecting the bonds.

■ Section 21(d) of the Act (415 ILCS 5/21(d) (West 2000)) provides that no person shall conduct any waste disposal operation without a permit granted by the Agency or in violation of any conditions imposed by such permit. If a permit is required for the operation of a waste disposal facility, a person shall apply to the Agency for such permit and the Agency shall issue such permit upon proof by the person that the facility will not cause a violation of the Act or of any regulation under the Act. 415 ILCS 5/39(a) (West 2000).

■ Section 811.700(f) of the Code (35 Ill. Adm. Code § 811.700(f) (West CD-ROM 2000)) states that "no person, other than the State of Illinois, its agencies and institutions, shall conduct any disposal operation *** unless that person complies with the financial assurance requirements" provided by the Code. The Code requires that the surety company issuing the bond be licensed to "transact the business of insurance by the Department of Insurance, pursuant to the Illinois Insurance Code, or at a minimum the insurer must be licensed to

transact the business of insurance or approved to provide insurance as an excess or surplus lines insurer by the insurance department in one or more states, and approved by the U.S. Department of the Treasury as an acceptable surety." 35 Ill. Adm. Code § 811.712(b) (West CD-ROM 2000). The Department of the Treasury lists acceptable sureties in its Circular 570. 35 Ill. Adm. Code § 811.712(b) (West CD-ROM 2000).

We affirm and hold that the supplemental permit application in this case was appropriately denied because the company failed to satisfy these requirements of the Act and Code when seeking the permit. Although the parties do not dispute that the bonds were valid and enforceable or that the Agency accepted the company's bonds for a different permit after Frontier was removed from the Circular 570 list, Frontier did not meet the statutory financial assurance requirements for the supplemental permit here as it was not on the list of approved sureties when this application was submitted and ruled on. See 35 Ill. Adm. Code § 811.712(b) (West CD-ROM 2000).

Although the company contends that the Agency failed to provide it with notice and an opportunity to respond before it considered the insufficiency of the bonds as a means to deny the permit, the company was well aware that financial assurance must be obtained from an approved surety and that the permit application could be denied for failure to do so. Therefore, the fact that the surety was removed from the Circular 570 list was not a matter outside the permitting process and the Agency did not have an obligation to provide notice to the company or an opportunity to respond during the permitting process.

We do not agree with the company that the denial was an impermissible use of the permitting process as an enforcement tool. Section 39(a) of the Act (415 ILCS 5/39(a) (West 2000)) provides that when a permit is required by regulation for the operation of any type of facility under the Act, the applicant shall apply to the Agency for such permit and it shall be the duty of the Agency to issue such a permit upon proof by the applicant that the facility will not cause a violation of the Act or of any regulation thereunder. Consequently, the Agency was required in this case to deny the permit application because the permit would cause a violation of the Act. See *Gersch v. Department of Professional Regulation*, 308 Ill. App. 3d 649, 720 N.E.2d 672 (1999) (providing that express legislative grants of powers or duties to administrative agencies include the power to do all that is reasonably necessary to execute those powers or duties).

We also do not agree with the company that equitable estoppel should be applied to this case. To invoke equitable estoppel against a public entity there must be an affirmative act on the part of the public

entity and the inducement of substantial reliance by that affirmative act. *Hamwi v. Zollar*, 299 Ill. App. 3d 1088, 702 N.E.2d 593 (1998). The party seeking to assert equitable estoppel against the public entity must show that the entity made a misrepresentation with knowledge that the misrepresentation was untrue. *Medical Disposal Services, Inc. v. Environmental Protection Agency*, 286 Ill. App. 3d 562, 677 N.E.2d 428 (1996).

In this case, the company failed to prove that the Agency knowingly represented that the bonds were compliant with the applicable regulations when it knew that they were not. Although the permit was ultimately denied because the bonds were determined to be insufficient, John Taylor testified that he believed the bonds met the applicable statutory and regulatory requirements because at the time they were issued Frontier was an approved surety. This does not amount to a knowing misrepresentation on the part of the Agency. Instead, it appears to be an error on the part of an employee of the Agency. Moreover, the company failed to present sufficient evidence in support of its claim that it had detrimentally relied on the Agency's acceptance of the bonds prior to the issuance of the August 2000 permits. See *Metromedia, Inc. v. Kramer*, 152 Ill. App. 3d 459, 504 N.E.2d 884 (1987) (finding that a plaintiff failed to prove its theory of equitable estoppel because it did not provide evidence of substantial loss due to its reliance on an erroneously issued permit).

■ The company's second argument is that the Board erred when it affirmed the hearing officer's decision to exclude testimony and documents relating to the June 29, 2001, permit for the gas probes. According to the company, the very same Frontier bonds that the Agency rejected and the Board affirmed as noncompliant for the May 11 permit were later accepted by the Agency for the June 29, 2001, permit. Moreover, the documents surrounding the June 29 permit were in the Agency's possession when it made the decision to deny the May 11 permit. The documents and testimony were relevant to this case to show that the Agency's application of the financial assurance regulations is inconsistent and that the Agency's denial of the permit was enforcement under the guise of permitting. The company also complains that it was entitled to receive a separate hearing on the issue of whether the Agency inconsistently applied its own regulations.

The Agency responds that the bonds were not a part of the record when it made the decision to deny the May 11 permit. Additionally, it claims that the bonds were needed for the May 11 permit because the statute required bonding for the disposal of waste in a new cell, but the bonds were not required for the June 29 permit for pollution control measures.

The Board determined that the evidence was properly excluded by the hearing officer. It based this determination only on a finding that the June 29 permit application was not part of the record before the Agency. Because the record on appeal is inadequate for this court to make a determination, we cannot say whether the Board's decision was proper. The record fails to contain the complete files of the Agency relating to the May 11 and the June 29 permit applications. Moreover, we are unable to determine whether the bonds were a requirement for the June 29 permit.

On appeal, it is the duty of the appellant to provide a record sufficient for reviewing the issues raised. *Davis v. Allstate Insurance Co.*, 147 Ill. App. 3d 581, 498 N.E.2d 246 (1986). Any doubts resulting from the absence of such a record will be held against the appellant. *Galarza v. Department of Labor*, 167 Ill. App. 3d 163, 520 N.E.2d 672 (1987). Because this court has insufficient information to guide us in our evaluation of this issue, we must presume the hearing officer correctly excluded the evidence. Accordingly, we affirm.

■ The company's last argument is that the Board erred by not addressing the Agency's substantive decision to deny the permit based on the landfill owner's prior felony conviction. It claims that the Agency was required to implement rules and procedures for conducting evaluations of landfill operators and that the Board failed to examine the Agency's procedures in this case. The company also complains that the Board was barred by the doctrine of *laches* from raising the issue of the felony conviction when it failed to raise the issue for at least six years. Because the Board agreed with the company that the Agency had improperly considered the felony conviction, we decline to address these issues on appeal. See *Illinois Central R.R. Co. v. Accident & Casualty Co. of Winterthur*, 317 Ill. App. 3d 737, 739 N.E.2d 1049 (2000) (finding that although a successful party may not agree with the reasoning of a lower court, it is improper to provide that successful party with a forum in a reviewing court).

For the foregoing reasons, the judgment of the Board is affirmed.

Affirmed.

LYTTON, P.J., and McDADE, J., concur.