No. 3--04--0536

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 2006

| | | |
|---|---|---|
| UNITED DISPOSAL OF BRADLEY, INC. and MUNICIPAL TRUST & SAVINGS BANK as Trustee under Trust 0799, | ) ) ) ) ) | Petition for Review of Order of the Illinois Pollution Control Board dated June 17, 2004 |
| Petitioners-Appellants, | ) ) | |
| v. | ) ) | No. PCB 03--235 |
| THE POLLUTION CONTROL BOARD and THE ENVIRONMENTAL PROTECTION AGENCY, | ) ) ) ) | Appeal from a Decision of the Illinois Pollution Control |
| Respondents-Appellees. | ) | Board |

PRESIDING JUSTICE SCHMIDT delivered the opinion of the court:

This appeal comes to us on a petition for review of an order of the Illinois Pollution Control Board (the Board) dated June 17, 2004. Petitioners, United Disposal of Bradley, Inc. (United Disposal), and Municipal Trust & Savings Bank, sought to have a geographical limitation removed from their operating permit. The Illinois Environmental Protection Agency (the Agency) denied the petitioners' request. The Board affirmed that denial. Petitioners appeal.

BACKGROUND

In June of 1994, petitioners filed an application with the Agency to obtain a development permit for a local waste transfer station. On September 21, 1994, a development permit was issued by the Agency that contained Special Condition No. 9, which stated, "No waste generated outside the municipal boundaries of the Village of Bradley may be accepted at this facility." Critical facts regarding this application and the statutory scheme under which it was issued will be discussed below to reduce repetition.

On December 9, 1994, the petitioners' facility was completed. On January 19, 1995, the Agency issued an operating permit that also contained Special Condition No. 9.

On March 31, 2003, petitioners filed an application for modification, asking the agency to remove Special Condition No. 9 from their operating permit. On May 15, 2003, the Agency directed correspondence to the petitioners informing them that their application was denied. Specifically, the Agency informed the petitioners that their application was "deemed not to have been filed because it fail[ed] to set forth information, documents or authorizations as required" by the Illinois Administrative Code. The Agency continued that, "due to the deficiency" with petitioners' application, no "technical review of the application" was performed.

The petitioners appealed the Agency's denial of its

2

application to the Board.  Both the petitioners and Agency filed motions for summary judgment with the Board.  The Board ultimately granted the Agency's motion for summary judgment. Petitioners appeal.

Petitioners make the following claims on appeal: (1) Special Condition No. 9 violates the commerce clause of the United States Constitution (U.S. Const., art. I, §8, cl. 3) and, therefore, is unconstitutional; (2) Special Condition No. 9 is unconstitutionally vague; (3) the Agency wrongfully denied petitioners' application since no violation of the Environmental Protection Act (the Act) (415 ILCS 5/1 *et seq*. (West 2002)) would have occurred if the application had been granted; and (4) the Agency's reply to petitioners' application was untimely in violation of the Agency's own regulations (35 Ill. Adm. Code §807.205(f) (1985)) and, therefore, the application should have been granted by operation of law.  We address these issues in the order presented.

## I. Commerce Clause

Petitioners argue that the main issue on appeal is "whether the subject clause of the permit Special Condition No. 9, which restricts petitioners from accepting waste that is generated outside the 'Municipal Boundary' of the Village of Bradley, is invalid as unconstitutional, as a *per se* violation of the U.S. Commerce Clause."  This might be true if the transfer station in

3

question is otherwise in compliance with the Act and qualified as a regional pollution control facility.  As we will discuss below, it is not.  We find that the Agency acted properly and, therefore, affirm the order of the Board.

On March 27, 2003, petitioners filed a document with the Agency that petitioners titled, "Application for Modification to Operating Permit 1994-30[6]-OP."  While petitioners chose to refer to their action as an "application for modification," in reality, the petitioners were attempting to gain authority to transform their "local" pollution control facility into a "regional" pollution control facility.  To fully understand the nature of petitioners' actions, we find it necessary to review the circumstances surrounding their original application and the statutory scheme under which it was granted.

A. Statutory Scheme Under Which Original Permit Issued

At the time petitioners applied for their permit, the Act required that every "regional pollution control facility" obtain siting approval prior to its operation.  415 ILCS 5/39, 39.2 (West 1992).  The Act defined a regional pollution control facility as "any *** waste transfer station, waste treatment facility or waste incinerator that accepts waste from or that serves an area that exceeds or extends over the boundaries of any local general purpose unit of government."  415 ILCS 5/3.32 (West 1992).

4

In 1994, at the time of petitioners' application, they had a choice: apply for a regional pollution control facility permit and obtain siting approval or apply for a permit to operate a local pollution control facility in which case siting approval was not required.  They chose the latter.

### B. Petitioners' Original Application

On June 17, 1994, the petitioners filed an "Application for Development Permit" with the Agency.  The application noted that "Siting Certification Form" LPC-PAB was completed and enclosed.  It further noted that siting approval was not "under litigation" at the time of filing.

The siting certification form attached to the application stated as follows:

> "Siting Approval.  The Applicant operates a
> solid waste hauling company serving customers within
> the Village of Bradley.  For this reason, the proposed
> facility qualifies as a non-regional facility.  Sections
> 22.14 and 39.2 of the Act do not apply to non-regional
> facilities.  Thus, siting approval reverts to the local
> zoning authority."

### C. *Tennsv v. Gade*

Approximately 11 months prior to the date on which petitioners filed their application, the United States District Court for the Southern District of Illinois issued an unpublished

5

order which declared the statutory scheme described in part IA of this opinion unconstitutional. *Tennsv, Inc. v. Gade*, No. 92 503 WLB, (S.D. Ill. July 8, 1993). The court found that the Act "establishes a statutory scheme which distinguishes between facilities located outside the geographic boundaries of a general purpose unit of government and those which are not so located." *Tennsv*, slip op. at 2-3. The court went on to note that there was "no valid factor to justify the discriminatory effect of the statutory scheme" and that it therefore "violates the Commerce Clause." *Tennsv*, slip op. at 5.

In response to the *Tennsv* decision, the Illinois legislature amended the Act effective December 22, 1994. The amendments removed the distinction between regional and local pollution control facilities.

Under the Act as amended in 1994, and in its current form, all "pollution control facilities" are required to obtain siting approval. 415 ILCS 5/3.330, 39(c), 39.2 (West 2004).

Petitioners argue that their current application, filed approximately 10 years after the *Tennsv* decision, was improperly denied due to the Agency and the Board's incorrect interpretation of constitutional law. We disagree and hold that petitioners' application was correctly denied as the Agency and Board recognized it for what it was, an attempt to operate a regional pollution control facility without first obtaining the necessary

6

siting approval required by the Act.

Petitioners now denounce the limitations contained within Special Condition No. 9, which they requested and failed to object to for approximately 10 years. They do a superb job of cataloging numerous commerce clause cases describing the evils of economic protectionism. That being said, we do not find the circumstances surrounding the denial of petitioners' application to be the result of unconstitutional economic protectionism. We note that neither the current nor prior statutory scheme involves a *Philadelphia v. New Jersey* situation in which commerce is blatantly halted at the border. See *Philadelphia v. New Jersey*, 437 U.S. 617, 57 L. Ed. 2d 475, 98 S. Ct. 2531 (1978) (United States Supreme Court struck down a New Jersey statute that prohibited the importation of waste which originated or was collected outside the territorial limits of the State of New Jersey). Nor is this a case in which out-of-state waste is subject to increased fees or surcharges above and beyond those charged against similar waste generated inside the State of Illinois. See *Chemical Waste Management, Inc. v. Hunt*, 504 U.S. 334, 119 L. Ed. 2d 121, 112 S. Ct. 2009 (1992) (which invalidated an Alabama statute that imposed higher fees on hazardous waste disposed of in Alabama landfills which originated outside Alabama than fees charged to similar waste that originated inside the state). See also *Oregon Waste Systems, Inc. v. Department of*

*Environmental Quality of the State of Oregon*, 511 U.S. 93, 128 L. Ed. 2d 13, 114 S. Ct. 1345 (1994) (which held Oregon's statute imposing a surcharge on out-of-state waste disposal that was almost three times greater than the surcharge on in-state waste violated the commerce clause).

This case involves a now defunct statutory scheme that subjected those who wanted to accept waste from outside a local unit of government to siting approval while subjecting those who wanted to accept waste from only a local entity to that local entity's zoning laws. None of the cases cited by petitioners gave the improperly restricted party such a choice. See *Northeast Sanitary Landfill, Inc. v. South Carolina Department of Health & Environmental Control*, 843 F. Supp. 100 (D.S.C. 1992); *Fort Gratiot Sanitary Landfill, Inc. v. Michigan Department of Natural Resources*, 504 U.S. 353, 119 L. Ed. 2d 139, 112 S. Ct. 2019 (1992); *Philadelphia v. New Jersey*, 437 U.S. 617, 57 L. Ed. 2d 475, 98 S. Ct. 2531 (1978); *Associated Industries of Missouri v. Lohman*, 511 U.S. 641, 128 L. Ed. 2d 639, 114 S. Ct. 1815 (1994); *New Energy Co. of Indiana v. Limbach*, 486 U.S. 269, 100 L. Ed. 2d 302, 108 S. Ct. 1803 (1988); *C&A Carbone, Inc. v. Town of Clarkstown*, 511 U.S. 383, 128 L. Ed. 2d 399, 114 S. Ct. 1677 (1994).

Under both the prior and current statutory schemes, petitioners could have applied for a permit to construct and

operate a facility with the capacity to accept waste from anywhere, be it waste that originated inside or outside a local geographic area. This court has previously stated, when analyzing the prior statutory scheme, that "it is the applicant who defines the intended service area, not the local decision-making body." *Metropolitan Waste Systems, Inc. v. Pollution Control Board*, 201 Ill. App. 3d 51, 55, 558 N.E.2d 785, 787 (1990). The Board ultimately found that, considering the statutory scheme which allows an entity to choose its service area, "the slight burden the permit imposes on interstate commerce does not outweigh the benefits that the permittees and the Village of Bradley enjoyed when the facility was established." We agree.

Not every exercise of state power with some impact on interstate commerce is invalid. *Edgar v. Mite Corp.*, 457 U.S. 624, 640, 73 L. Ed. 2d 269, 282, 102 S. Ct. 2629, 2639 (1982). When a siting requirement applies evenhandedly, "and has only an incidental impact on interstate commerce, the relevant inquiry is whether or not it effects a legitimate public interest, and if so, whether any burden on interstate commerce is '*clearly excessive* in relation to the putative local benefits.'" (Emphasis in original.) *LaFarge Corp. v. Campbell*, 813 F. Supp. 501, 513 (N.D. Tex. 1993), quoting *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142, 25 L. Ed. 2d 174, 178, 90 S. Ct. 844, 847 (1970).

9

Undoubtedly, the regulation of solid waste disposal for the protection of public health and safety is a legitimate governmental purpose. *L&H Sanitation, Inc. v. Lake City Sanitation, Inc.*, 769 F. 2d 517 (8th Cir. 1984).

The Board acts in its quasi-judicial capacity when reviewing an Agency's decision to grant or deny a permit. *Environmental Protection Agency v. Pollution Control Board*, 308 Ill. App. 3d 741, 721 N.E.2d 723 (1999). A court of review will uphold a quasi-judicial determination unless it is contrary to the manifest weight of the evidence. *Environmental Protection Agency v. Pollution Control Board*, 308 Ill. App. 3d at 748; *Community Landfill Co. v. Pollution Control Board*, 331 Ill. App. 3d 1056, 772 N.E.2d 231 (2002).

Again, despite petitioners' arguments to the contrary, this is not a case of unconstitutional economic protectionism. This case involves a private entity that made a choice to forego the siting process more than 12 years ago when it had that option. That ceased to be an option days after petitioners received their operating permit. Knowing that every pollution control facility similar to the one petitioners seek to operate must acquire siting approval, petitioners now effectively request that they be grandfathered in to the new statutory scheme and allowed to ignore the siting process. The Agency and the Board correctly recognized that granting petitioners' request would violate the

10

Act's siting requirement.  415 ILCS 5/39(c) (West 2004).

II. Unconstitutional Vagueness of Special Condition No. 9

Petitioners contend that Special Condition No. 9 is unconstitutionally vague and, therefore, violates their due process rights under the United States and State of Illinois Constitutions.  Specifically, they claim that the condition fails to "provide fair warning of what conduct is prohibited."

Special Condition No. 9 provides that: "No waste generated outside the municipal boundaries of the Village of Bradley may be accepted at this facility."  This could not be more clear.

Petitioners argue that the terms "generated" and "municipal boundaries" are subject to so many interpretations that the Agency can engage in "selective enforcement" depending on which interpretation it favors.  The Agency and Board counter that petitioners have had no trouble understanding or interpreting the condition for 10 years, which belies "any feigned confusion by United Disposal."  The Board and Agency further argue that petitioners have waived this argument as they failed to timely bring it.

In reply to the Agency and Board's waiver argument, petitioners contend that the ability of the Agency "to argue waiver was waived by the Agency when it responded [to] the petitioners' vagueness argument in the summary judgment briefing before the Board."  Turnabout is fair play.

11

The waiver rule, of course, is a limitation on the parties and not upon the jurisdiction of a reviewing court. *Freedom Oil Co. v. Pollution Control Board*, 275 Ill. App. 3d 508, 655 N.E.2d 1184 (1995). We will address petitioners' vagueness argument.

A regulation is unconstitutionally vague and violates due process if it leaves the community regulated unsure of what conduct is prohibited or fails to provide adequate guidelines to the administrative body charged with its enforcement. *Smith v. Goguen*, 415 U.S. 566, 39 L. Ed. 2d 605, 94 S. Ct. 1242 (1974). That is not the case in this situation. As the Board notes, petitioners had no problem deciphering the condition for 10 years. Petitioners seemed to clearly understand the terms when they applied for a permit that did not require siting approval. Neither the term "generated" nor the term "municipal boundaries" is so perplexing as to leave one wondering what is prohibited. We hold Special Condition No. 9 is not void for vagueness.

III. Denial of Application in Violation of the Act

Petitioners contend that "no violation of the Act" would have occurred if the Agency had granted their request and as such it was error to deny it. This contention piggybacks petitioners' original argument that the prior statutory scheme from which Special Condition No. 9 was created violated the commerce clause and, as such, any restriction imposed by the state under that scheme is void as it was based upon an unconstitutional state

12

enactment.  See *Papasan v. Allain*, 478 U.S. 265, 92 L. Ed. 2d 209, 106 S. Ct. 2932 (1986).  Petitioners continue that given the *Tennsv* decision, any condition imposed under the parts of the Act declared unconstitutional by the *Tennsv* court are invalid.  We disagree.  As noted in part ID above, we do not find that Special Condition No. 9 was the result of unconstitutional economic protectionism.  Clearly, granting petitioners' application notwithstanding petitioners' failure to acquire (or even seek) siting approval would violate the Act.  See 415 ILCS 5/39(c) (West 2004).

### IV. Untimely Reply to Application in Violation of Agency's Regulations

Petitioners' final contention is that their request should have been granted by operation of law since the Agency's response to their application was untimely.  The applicable section of the Administrative Code provides that "if the Agency fails to notify the applicant within *** 30 days after the receipt of an application for an operating permit [ ] that the application is incomplete, and of the reasons, the application shall be deemed to have been filed on the date received by the Agency."  35 Ill. Adm. Code §807.205(f) (1985).

The Board acknowledged that the Agency issued its response to petitioners' application 45 days after it was filed and the response was therefore untimely.  Furthermore, the Board upheld

13

the Agency's denial of "United Disposal's request as incomplete."
 An administrative agency cannot ignore it's own rules once they have been established pursuant to statutory authority.  *Margolin v. Public Mutual Fire Insurance Co.*, 4 Ill. App. 3d 661, 281 N.E.2d 728 (1972); *Panhandle Eastern Pipe Line Co. v. Environmental Protection Agency*, 314 Ill. App. 3d 296, 734 N.E.2d 18 (2000).  Having failed to inform petitioners that their application was incomplete and "of the reasons" why within the time prescribed by section 801.205(f), the Agency undoubtedly failed to comply with its own rules.

This does not mean, however, that the application should have automatically been granted by operation of law as petitioners suggest.  While petitioners make this claim, they cite no authority to support it.

Given that section 40 of the Act states that "the decision of the Board shall be based exclusively on the record before the Agency including the record of the hearing, if any" (415 ILCS 5/40(d) (West 2004)), and the Agency's action of ignoring its own rule which resulted in its failure to conduct a technical review of petitioners' application, our initial inclination would be to remand this cause to the Agency to perform a technical review of the application as filed.  That, however, is unnecessary.

There is no doubt that the Act has always required siting approval to develop and operate the type of pollution control

14

facility sought by petitioners. See 415 ILCS 5/39(c), 39.2 (West 1992). There is also no doubt from the record that petitioners never obtained (or even sought) proper siting approval. As such, the only action the Agency could have taken had it performed a technical review would have been to deny the application.

The Administrative Code states that "the Agency shall not grant any permit *** unless the applicant submits adequate proof that the solid waste management site *** will be developed, modified, or operated so as not to cause a violation of the Act or the Rules." 35 Ill. Adm. Code §807.207(a) as amended by 20 Ill. Reg. 12457 (eff. August 15, 1996). Following the Agency's denial of their application, on appeal to the Board the petitioners needed to "establish that [granting their application] would not result in any future violation of the Act." *Browning-Ferris Industries of Illinois, Inc. v. Pollution Control Board*, 179 Ill. App. 3d 598, 603, 534 N.E.2d 616, 620 (1989). This petitioners cannot do, as they have failed to acquire siting approval.

## CONCLUSION

For the foregoing reasons, the decision of the Illinois Pollution Control Board is confirmed.

Confirmed.

HOLDRIDGE and McDADE, JJ., concur.

15